## COMMONWEALTH *vs.* SARAH E. HOWE.

Suffolk.    Jan. 24. — March 2, 1882.    ENDICOTT & FIELD, JJ., absent.

An indictment for obtaining money by false pretences alleged that the defendant made certain false pretences, and "then and there asked and requested" the person defrauded "in consideration thereof to pay and deliver" to the defendant the money in question. *Held*, that the indictment sufficiently set forth the defendant's purpose in making the false pretences.

An averment in an indictment of obtaining a sum of money by false pretences is not supported by proof of obtaining a certificate of deposit of a bank.

An indictment alleged that the defendant obtained money from persons named, by falsely pretending to them that a certain great fund had been left under a legacy for the establishing of a charitable institution of deposit for a certain class of people; that such an institution had been established and carried on; that there was a branch department of such institution in a certain city; and that the defendant was the president of such branch department. There was evidence at the trial that the defendant's assignee in insolvency told the defendant that there was a deficiency of property to a large amount, and urged him to tell him if he had any means to make up this deficiency, and about the circumstances of the institution and in regard to its directors; and that the defendant refused to give him any information as to any of these particulars. *Held*, that evidence was admissible to show that the defendant had received from other persons than those named in the indictment a sum larger than the deficiency, and had given notes and deposit books therefor; and that this evidence, coupled with the defendant's refusal to give the information desired by the assignee, and proof that the sum received had mostly disappeared, and that no trace of such institution or of the disposal of the property could be found,

tended to show that the defendant's representations in regard to the existence of the institution were false.

It is no defence to an indictment for obtaining money from a certain person by false pretences, that the defendant might have obtained money from other persons by similar pretences, and omitted to do so; or that in cases where he had obtained other money, either by false pretences or otherwise, he had repaid the same.

It is no objection to the admission in evidence of statements made by the defendant in a criminal case, after his arrest, to the assignee in insolvency of his estate, that, at a former interview between them, the assignee held out inducements to the defendant to make statements, if, at the interview during which they were made, enough was done by the assignee to remove from the defendant's mind the impression caused by the former interview.

An indictment for obtaining money by false pretences alleged that the defendant made certain false pretences, as to the establishment of a charitable institution of deposit having a branch department of which he was the president, and "then and there asked and requested" the person defrauded "in consideration thereof to pay and deliver" to the defendant the money in question, "as and for a deposit to the credit and account of" such person. *Held,* that the averment of the request by the defendant for the deposit need not be literally proved.

INDICTMENT in five counts. The first count was as follows: "The jurors for the Commonwealth of Massachusetts, on their oaths, present that Sarah E. Howe, of Boston aforesaid, on the fifth day of May, in the year of our Lord one thousand eight hundred and seventy-nine, at Boston aforesaid, being a person of an evil disposition, and devising and intending by unlawful ways and means to obtain and get into her hands and possession the goods, merchandise, chattels and effects of the honest and good citizens of this Commonwealth, and with intent to cheat and defraud, did then and there, unlawfully, knowingly and designedly, falsely pretend and represent to one Emily E. Dadman that theretofore a fund of fifteen hundred thousand dollars had been left under a legacy directing that said sum should be used to establish and carry on a charitable institution of deposit for the benefit of single women and widows; that, in pursuance of said direction and by virtue of said legacy and fund, an institution had been theretofore originated, established, lawfully organized and thereafterwards carried on under the name of the Ladies' Deposit; that the same then was, and theretofore had been, a benevolent institution for women who had not income enough to support them; that said fund had been left by certain Quakers who had thereby founded said institution,

which had been supported by means of said fund and other bequests left by Quákers; that said Ladies' Deposit then had a branch department in said Boston, and that said branch department was and theretofore had been similar to those charitable institutions in said Boston that support people; that said Ladies' Deposit had theretofore paid to all its depositors interest amounting to a sum very many times larger than the principal sum on deposit; that the payment of extraordinarily large rates of interest to deserving needy persons had been, by the founders of said institution, declared to be the medium through which the charitable aims of said institution should be effected, in respect to such deserving needy persons as were unwilling to accept charity, and to be their purpose and object in establishing said Ladies' Deposit; that said institution from the date of its origin as aforesaid thereto had never admitted as its depositors any but deserving needy persons from a class confined to single women and widows; that she, said Howe, was then and there the acting president of said branch department; that she, said Howe, had been connected with said institution since the year eighteen hundred and fifty-nine. And the said Howe then and there asked and requested said Dadman in consideration thereof to pay and deliver to her, said Howe, the sum of six hundred dollars as and for a deposit to the credit and account of her, said Dadman, in said Ladies' Deposit. And the said Dadman, then and there believing the said false pretences and representations so made as aforesaid by her, the said Howe, and being deceived thereby, was induced, by reason of the false pretences and representations so made as aforesaid, to pay and deliver as and for a deposit as aforesaid, and did then and there pay and deliver to the said Howe, as and for a deposit as aforesaid, and said Howe did then and there receive from her, said Dadman, the sum of six hundred dollars of the proper moneys, goods, merchandise, chattels and effects of said Dadman. And the said Howe did then and there receive and obtain the said moneys, goods, merchandise, chattels and effects of the said Dadman by means of the false pretences and representations aforesaid, and with intent to cheat and defraud. Whereas, in truth and in fact, said fund had not been left in manner and form aforesaid to be used as aforesaid; and said institution was

not originated, established, lawfully organized and carried on in manner and form as aforesaid; and said institution was not a benevolent institution as aforesaid; and said fund was not left by Quakers as aforesaid; and said institution was not supported as aforesaid; and said Ladies' Deposit did not have a branch department in said Boston as aforesaid; and was not similar to said charitable institutions in said Boston, in manner and form aforesaid; and said Ladies' Deposit had not theretofore paid all its depositors interest in manner and form as aforesaid; and the founders of said institution had not declared the purpose and object of their establishing said Ladies' Deposit to be as aforesaid; and had not declared the payment of extraordinarily large rates of interest, as aforesaid, to be the medium of effecting the charitable aims of said institution, in manner and form as aforesaid; and the persons admitted as depositors to said institution were not confined to single women and widows as aforesaid; and said Howe was not then and there the acting president of said branch department, and said Howe had not been connected with said institution since the year eighteen hundred and fifty-nine, as aforesaid; all of which she, said Howe, then and there well knew. And so the jurors aforesaid, upon their oaths aforesaid, do say, that the said Howe, by means of the false pretences aforesaid, on the said fifth day of May, in the year of our Lord eighteen hundred and seventy-nine, at Boston aforesaid, unlawfully, knowingly and designedly, did receive and obtain from said Dadman the said moneys, goods, merchandise, chattels and effects, of the proper moneys, goods, merchandise, chattels and effects of the said Dadman, with intent to defraud, against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

Each of the remaining counts alleged the obtaining by the defendant of different sums of money from another person, by false pretences similar to those set forth in the first count; the third count stating the sum of $1000 to have been so obtained from Matilda Bailey.

In the Superior Court, before the jury were empanelled, the defendant filed a motion to quash the indictment for the following reason: " There is no averment in each and every count of

the purpose for which the said defendant sought to get into her possession the property alleged in the indictment." *Aldrich*, J. overruled the motion; and the defendant excepted.

The defendant then pleaded not guilty. At the trial, the evidence in support of the third count showed that Matilda Bailey, therein named, paid and delivered to the defendant the sum of $760, and that in the form of a certificate of deposit of a bank in Philadelphia. Thereupon the defendant objected that there was a material variance between the proof and the allegation in said count, namely, that the said Bailey did not pay and deliver to the said defendant the sum of $1000. This objection was overruled, and the defendant excepted.

It appeared in evidence that each depositor, at the time she made her deposit of money in what the defendant represented as a charitable institution, called a Ladies' Deposit, received from the defendant, or her authorized agent, a small deposit-book containing in print what are therein called regulations, and of which the following is a copy : " The Ladies' Deposit is a charitable institution for single ladies, old and young. No deposits received for less than two hundred dollars, nor more than one thousand. Interest, at the rate of eight dollars on a hundred per month, is paid every three months in advance. The principal can be withdrawn upon call, any day except Sunday." With such book each depositor also received at the same time, from the defendant ·or her authorized agent, a promissory note for the amount of her deposit, which note was signed by the defendant or by J. A. Gould, her authorized agent to receive deposits in said Ladies' Deposit for the defendant, to issue such deposit-books, and sign and deliver promissory notes for the defendant to depositors for the amount of their deposits. The defendant introduced evidence, tending to prove that early in October 1880, a few days before she was arrested upon a criminal charge, she paid from $75,000 to $100,000 on notes given as aforesaid, which were not due at the time of payment.

The government, in support of its allegations that a fund of fifteen hundred thousand dollars, and other bequests, had not been left to found and support said institution called the Ladies' Deposit, as set forth in the indictment, offered in evidence the books and notes proved against the estate of the defendant in

involuntary proceedings in the insolvency court, and which had been issued and given by her to depositors, amounting to about $250,000, which books and notes were others than those belonging to the persons named in the indictment. To this evidence the defendant objected; but the judge admitted the same, and the defendant excepted. It was admitted by the defendant that the said books and notes proved against her in insolvency correctly represented the sums of money due and unpaid to the several depositors therein named.

The defendant, in order to negative the allegation of intent to cheat and defraud, offered to show that the defendant often refused depositors when the applicant did not come within the rules prescribed, and had also kept her agreements with her depositors and paid her obligations as they became due, until she was prevented from doing so by attachment, and arrest and imprisonment. The judge declined to admit the evidence, and the defendant excepted. This evidence was not offered for the purpose of showing that said institution had never admitted as its depositors any but deserving and needy persons from a class confined to single women and widows, nor for the purpose of showing that said institution had paid to all its depositors interest amounting to a sum very many times larger than the principal sum on deposit, prior to the times when the persons named in the several counts of the indictment made their deposits, as set forth in said counts.

Augustus Russ, the defendant's assignee in insolvency, was called by the government, and testified as follows: " After my appointment as assignee, I had a talk with Mrs. Howe, at the jail, in relation to her estate. The first time I saw her, I made statements to her which would make it improper for me to give her conversation. Afterwards, and about January 13, 1881, I was sent for by Mrs. Howe. I saw her at the jail. I said to her that, unless she had something to say to me which would tend to settle the estate, I did not want to talk. She began to tell me about her case in the criminal court. I told her I did not want to talk about that, for I was then acting in a capacity adverse to her, and her counsel had told her not to talk with me. I said, if she could tell me anything about the property which I ought to get, I would like to hear it. She

told me that if she got out of jail she would pay everybody off, though not all at one time. I several times before this had told her not to tell me anything which she did not wish me to communicate. At this interview I did not tell her that if she wanted to get out of jail she must tell me everything, although I did make some such statement at the first interview, which I have already mentioned."

The defendant objected to any further testimony from Mr. Russ, resting her objection upon the ground that the impression caused by the defendant at the first interview might have lasted and been permanent, and that she still thought and believed that by a free talk with Mr. Russ, he being interested in the case, and her assignee in insolvency, he would use his influence for her. Mr. Russ here remarked that he did say that, if she would surrender to him the books which Mr. Towne had, he would see that they were not used against her; that it was his duty to find out all he could in regard to the estate; but he cautioned her not to say anything to him which she did not wish disclosed. The books were never surrendered to Mr. Russ. The judge admitted the evidence, stating that it seemed to him that the witness had done all he could to disabuse Mrs. Howe of the impression that she could expect any favors from him; and the defendant excepted.

Mr. Russ then continued: " Mrs. Howe would keep saying, that if she was out of jail she could pay all these depositors. I asked her how, and she said she was not at liberty to disclose the means; that she was only a salaried agent at $100 per month. I asked her, if that were the case, how she was able to buy that house, and pay $40,000. She answered that they advanced her the money, to be taken out of her salary. I asked her who 'they' were. She asked me in return, what would I do if I were under oath not to tell. I replied that I did not believe that she had taken any oath that would be very binding upon her, and pressed her to tell me who 'they' were. She said, ' Why, they're all around you now. I have taken an oath of office, and am sworn not to tell.' I laughed at the idea of any such oath, and urged her to tell me whom she was sworn by. She refused to tell me either that or about the circumstances of the institution. Referring again to the books in Mr. Towne's

possession, I told her that I ought to have those books, in order to check off the claims as they were presented to me. I asked her in regard to any directors of the concern, because, if there were any, I ought to go to them. She would not tell me. I told her that there were about one thousand depositors, and to pay them all would require about $200,000; that to meet these demands I could only find property worth about $25,000, and, if she had any means by which to make up the deficiency, she ought to tell me. She repeated her statement that she was under oath not to tell the means, but that if she could get out of jail they would all be paid off in the end. About the notes, she told me that whatever Mrs. Gould signed was all right."

At the close of the evidence for the government, the defendant requested the judge to rule, that as each count in the indictment alleged that Mrs. Howe then and there asked and requested the injured party named therein, in consideration thereof, to pay and deliver to her, said Howe, the sum named in said count as and for a deposit to the credit and account of said injured party so named in said Ladies' Deposit, and there being no evidence that said Howe made such request in the express terms set forth in the indictment, there was a fatal variance between the allegation and proof. This request was refused; and the defendant excepted. Full and appropriate instructions, not objected to, were given to the jury by the judge upon all questions arising on the indictment and evidence.

The jury returned a verdict of guilty on the first four counts, and not guilty on the fifth count; and the defendant alleged exceptions.

*A. O. Brewster*, for the defendant.

*G. Marston*, Attorney General, (*C. H. Barrows*, Assistant Attorney General, with him,) for the Commonwealth.

C. ALLEN, J. 1. The defendant moved to quash this indictment, on the ground that there is no averment, in each and every count, of the purpose for which the defendant sought to get into her possession the property alleged in the indictment. In support of this motion, it has been argued that the indictment is defective in not averring that the false pretences were made with a view to induce the party alleged to have been

defrauded to pay to the defendant as a deposit the money thereinafter mentioned.

It has been held that an indictment for obtaining money or goods by false pretences must set forth distinctly, first, that there was an actual transaction between the parties, a payment of money, or delivery of property; second, that it was the defendant's purpose, in making the false pretences, to effect such a transaction; and, third, that the party alleged to have been defrauded was actually deceived by the false pretences. Indictments in several cases have been held defective for want of some one or more of these particulars. *Commonwealth* v. *Strain*, 10 Met. 521. *Commonwealth* v. *Lannan*, 1 Allen, 590. *Commonwealth* v. *Goddard*, 4 Allen, 312. In the present case, the indictment in each count sets forth that the defendant made certain false pretences, and then and there asked and requested said (naming the person defrauded) in consideration thereof to pay and deliver to her, said defendant, the money in question. This averment, though not in the usual form, is sufficient to show the defendant's purpose in making the false pretences.

2. The third count charges that the defendant obtained by false pretences the sum of one thousand dollars from one Bailey; and the proof was, that Bailey paid and delivered to the defendant " the sum of seven hundred and sixty dollars, and that in the form of a certificate of deposit of a bank in Philadelphia." It is objected that this was a variance; and this objection must prevail. We must assume that the defendant obtained from Bailey a certificate of deposit of a bank in Philadelphia, for the sum named. The variation in amount is immaterial; but an averment of obtaining a sum of money by false pretences is not supported by proof of obtaining a certificate of deposit of a bank. It is provided by statute that in certain enumerated cases this would be no variance. Gen. Sts. *c.* 161, § 42; Pub. Sts. *c.* 203, § 44. These statutes do not apply to an indictment for obtaining money by false pretences. The general rule, that property must be accurately described, is therefore applicable here.

3. The objection most relied on in argument is, that evidence was admitted to show that the defendant had received from other persons than those named in the indictment the sum of

about two hundred and fifty thousand dollars, and had given notes and deposit-books therefor. It is contended that there is no logical connection between this evidence and the matter to be proved. There was no request for a ruling that the whole evidence in the case was insufficient to warrant a conviction; and the bill of exceptions does not purport to set out the whole evidence. The government was to establish by circumstantial evidence a negative; namely, that there was no such great fund as represented; that no such institution was established to administer said fund; that there was no branch department of such institution in Boston; and that the defendant was not the president of such branch department. There was evidence that Mr. Russ, her assignee in insolvency, told her that there was a deficiency of property, to the amount of about one hundred and seventy-five thousand dollars, and urged her to tell him if she had any means to make up this deficiency, and about the circumstances of the institution, and in regard to its directors; and that she refused to give to him any information as to any of these particulars. Without now looking further than is indicated by the evidence which appears to have been introduced, it is obvious that such refusal by her to account for so large an alleged disappearance of property, or to give any particulars in relation to the circumstances or management of the alleged institution, coupled with the evidence, which was objected to, that in point of fact she had obtained two hundred and fifty thousand dollars from other persons as deposits in the alleged institution, and with proof also that this amount had mostly disappeared, and that no trace could be found of any such institution, or of her disposition of the money, would have a legitimate tendency to establish the main proposition, that her representations in regard to the existence of such institution were false. In judging of the relevancy of circumstantial evidence, each circumstance is not to be taken by itself, but in connection with all the others. Each circumstance may by itself be trifling; in combination, they may be strong. It is only necessary in this case for the court to be able to see that the evidence which is objected to, when taken in connection with other facts which were or may have been testified to, would have some natural connection with the fact to be proved; and this, we think, abundantly appears.

4. In order to negative the averment of an intent to cheat and defraud, the defendant offered evidence to show that she often refused to receive money from other persons who sought to make deposits, when such applicants did not come within certain prescribed rules; and that she kept her agreements with her depositors and paid her obligations as they became due, until she was prevented from doing so by attachment and arrest; but this evidence was excluded. Being charged with obtaining certain moneys by false pretences, it was no defence to show that she might have obtained other moneys from other persons by similar pretences, and omitted to do so; or that in cases where she had obtained other moneys, either by false pretences or otherwise, she had repaid the same. Such facts, if proved, would have no tendency to show that she did not obtain these moneys charged in the indictment; or that she did not make the representations charged; or that the representations were true. If a deposit or loan was pressed upon her, and she refused to receive it until overborne by the persistency of the applicant, or if she repaid a deposit or loan when it became due, such fact in either case might have a legitimate tendency to show that she did not obtain such particular deposit or loan by false pretences. But the fact that she did not obtain certain particular deposits or loans, however numerous, by false pretences, is not legitimate matter of defence against an indictment charging her with obtaining other deposits or loans in that manner.

5. No error is apparent in the admission of the statements of the defendant to Mr. Russ. It is in the first instance a question for the presiding judge to determine upon the admissibility of the evidence in such cases. So far as we can see, Mr. Russ had done enough to remove from the defendant's mind any impression caused by his former interview. It was still open to the defendant to ask for an instruction to the jury, that, if they were of the opinion that she was under the influence of inducements held out by Mr. Russ, they should disregard her statements. No such request was made. Not now considering, therefore, whether in point of fact anything shown to have been said by the defendant could be regarded as a confession, it does not appear that there was any sufficient ground to exclude her statements.

6. The averments in the indictment of requests by the defendant for the deposits need not be literally proved. The bill of exceptions, indeed, does not distinctly state that there was no evidence to prove the requests in the very words charged; but only that the request for instructions assumed the fact to be so. The decision, however, need not rest on this narrower ground.

*Exceptions sustained as to third count; overruled·as to the others.*