BATES, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 18—April 5, 1905.*

*Criminal law: Obtaining money by false pretenses: Bank draft cashed in another state: Materiality of false statements: Instructions to jury: Information: Defective counts: General verdict.*

1. Defendant, by means of false pretenses, obtained a loan of moneys. No part thereof was paid directly to him, but upon his request that the moneys be sent to two persons designated by him the lender's agent bought bank drafts and mailed them to such persons. These transactions took place in this state, in the county in which the venue was laid. Upon one of said drafts the person to whom it was sent, a creditor of defendant, obtained the money in Iowa. There was no evidence as to what became of the other draft. *Held*, that these facts did not warrant a conviction under an information charging the obtaining of money by false pretenses in said county. MARSHALL, J., dissents.

2. In a prosecution for obtaining money by false pretenses, defendant's representations as to the value of his land upon which he obtained a loan were immaterial as being mere expressions of opinion, but his statements of specific facts as to what he paid for the land were material, although their effect was merely to convince the lender of the value of the land.

3. An additional instruction to the jury, given after they had once retired, to the effect that if they found any one of the alleged false pretenses, that would suffice, with the qualifications given in the original charge, is *held* not erroneous as omitting the qualification, previously given, that the misrepresentation must have been material.

4. A count in an information for obtaining money by false pretenses charging that the money was obtained from H. P. P. & Son is bad, in that it fails to specify any person from whom the money was obtained.

5. A general verdict of guilty will be ascribed to the good counts in an information, where there is nothing in the instructions or otherwise to indicate that it was addressed to bad counts.

ERROR to review an order of the circuit court for Vernon county: J. J. FRUIT, Circuit Judge. *Reversed.*

Plaintiff in error, hereinafter called "defendant," was charged by information under sec. 4423, Stats. 1898, for that in Vernon county, Wisconsin, by various specified misrepresentations as to the amount, quality, characteristics, and cost of a tract of land in Crawford county, Wisconsin, on which he desired a loan, he did receive and obtain from H. P. Proctor, the agent of one Nicholas Senn, "the sum of $1,500 of the money and property of said Nicholas Senn, with intent then and there to defraud;" the information further alleging the falsity of the representations to the knowledge of the defendant, and the credence thereof by said Proctor. Another count alleged substantially the same facts, with the additional one that the defendant at the same time made a written statement or application for loan embodying most of the representations. Two other counts were identical with those described, except that they alleged the representations were made to and deceived "H. P. Proctor & Son," the agents of Nicholas Senn, and that he received and obtained the said sum from them. Upon the trial there was proof of the making of the representations to H. P. Proctor, of their falsity, and his reliance thereon, and that in reliance thereon said Proctor awarded the defendant a loan of $1,500 out of the moneys of said Senn, then in his hands as agent to loan the same; that out of the said loan Proctor retained $50 for his commission, and was requested by the defendant to send the balance of the money, $970 thereof to one Bascom, of Lansing, Iowa, to whom defendant was then indebted for that amount of the purchase price, and the remainder, $470.75, to one Haggerty at Farryville, in Crawford county, Wisconsin. Proctor accordingly drew and signed checks of his firm, went to the bank where his firm kept a deposit, and purchased two drafts of that bank on another bank for the above-mentioned amounts, less exchange, and mailed them to the respective persons above mentioned at their postoffice addresses. There was evidence that Bascom got the money on the draft

mailed to him at Lansing, Iowa. There was no evidence as to what became of the draft to Haggerty.

Defendant, at the close of the state's evidence, moved for nonsuit or direction of verdict, but after such motions were overruled he introduced evidence in defense, and did not renew them at the close of all the testimony. After a general verdict of "guilty as charged," the defendant moved for a new trial for errors in the instruction and in the admission and exclusion of evidence, and because the verdict of the jury was ambiguous and not specific, and because it was against the evidence and contrary to law, which motion was denied. For review of such order defendant sued out writ of error.

For the plaintiff in error the cause was submitted on the brief of *C. J. Smith.*

For the defendant in error there was a brief by the *Attorney General* and *Frank T. Tucker,* second assistant attorney general, and the cause was argued orally by *Mr. Tucker.*

Dodge, J. The first assignment of error is that the evidence did not establish the offense. The charge was of obtaining from H. P. Proctor, as agent, the sum of $1,500 of the money and property of Nicholas Senn. That this charges the obtaining of money specifically there can be no doubt. "The sum of $1,500" to the ordinary intelligence means money. To nothing else is the expression applicable. *State v. Ryan,* 34 Wash. 597, 603, 76 Pac. 90; *Comm. v. Howe,* 132 Mass. 250. Indeed, if it charged the obtaining of any other property, the information would be bad for lack of any allegation that such property was of value. What, in fact, was accomplished by means of the alleged representations, after inducing Proctor to accede to a loan on account of his principal, Senn, was that Proctor made out and signed two checks in the name of his firm, which he took to the bank, and from the bank obtained two drafts—one for $470.75,

payable to the order of H. P. Proctor & Son; the other for $970, payable to the order of the Bank of Lansing, Iowa. The first of these Mr. Proctor mailed to one Haggerty, and the other he says he sent to one Bascom, but probably sent, it to the Bank of Lansing, with directions to pay the money to Bascom upon delivery of the title deeds of the land mortgaged. These steps he took upon the request of the defendant merely that he send $970 of the loan money to Mr. Bascom and the balance to Mr. Haggerty, not prescribing the method of transmission.

Upon this state of facts it is, of course, apparent that the defendant never did personally obtain from Mr. Proctor any money, and the question is whether the transaction above described can in any way constitute the equivalent for that statutory description of the offense with which he is accused.

The gravamen of the crime is the obtaining of the property described, as will be shown by the authorities hereinafter cited upon the question of the place of the crime. This statute, like other criminal statutes, must receive strict construction. *State v. Kube,* 20 Wis. 217, 225; *State v. Black,* 75 Wis. 490, 44 N. W. 635; 2 Bishop, New Crim. Law, §·415; *People v. Poucher,* 30 Hun, 576. This for at least two practical objects: First, that the accused may be unambiguously notified of the acts charged, in order to prepare his defense; and, secondly, to the end that in case of either conviction or acquittal he shall not be subject to be again put in jeopardy for the same offense for which he has been once tried. In pursuance with that view it has been held that the proof must establish the obtaining of the very property alleged in the information, or some part of it; that an allegation of obtaining money is not satisfied by proof of obtaining some other property, even so nearly the equivalent of money as evidences of money indebtedness or orders to pay money. *Schleisinger v. State,* 11 Ohio St. 669; *Baker v. State,* 31 Ohio St. 314; *Comm. v. Howe,* 132 Mass. 250; *Comm. v.*

*Wood,* 142 Mass. 459, 8 N. E. 432; *Reg. v. Brady,* 26 U. C. Q. B. 13; *People v. Haynes,* 14 Wend. 546. Other illustrations of the necessity that money, as such, should actually pass from the hand of the defrauded person to that of the accused in order to support the charge of obtaining money, are numerous. Thus, fraudulently obtaining consent to the entry of a judgment against a city is held not sufficient, although the judgment be afterward paid, and the money actually received by accused, without further misrepresentation (*Comm. v. Harkins,* 128 Mass. 79); procuring a pre-existing account to be receipted and balanced (*Comm. v. Usner* [Pa.] 6 Lanc. Law Rev. 121; *Moore v. Comm.* 8 Pa. St. 260); or obtaining indorsement of credit on a note (*Reg. v. Eagleton,* 1 Jur. N. s. 940, 944; *State v. Moore,* 15 Iowa, 412); obtaining a credit entry to one's account with his banker (*Rex v. Wavell,* 1 Moody C. C. 224); obtaining transfers of accounts so as to result in a credit to the accused (*Reg. v. Crosby,* 1 Cox C. C. 10; *Jamison v. State,* 37 Ark. 445). Obtaining shipping receipt does not support charge of obtaining the goods (*People v. Haynes, supra*); charge of obtaining property not supported by obtaining board and lodging (*State v. Black, supra*).

The absolutism of the necessity for actual physical tradition from the accuser to the defendant personally was early relaxed to the extent of holding that a delivery to a person designated by the defendant to receive for his benefit would suffice. *Reg. v. Jones,* 1 Den. C. C. 551; *Sandy v. State,* 60 Ala. 58; *Comm. v. Taylor,* 105 Mass. 172; *Comm. v. Wood,* 142 Mass. 459, 8 N. E. 432; *Comm. v. Karpowski,* 167 Pa. St. 225, 31 Atl. 572; *Comm. v. Schmunk,* 22 Super. Ct. (Pa.) 348; *S. C.* 207 Pa. St. 544, 56 Atl. 1088. This was on the theory that defendant expressly constituted the person so designated his agent, and that by such delivery the property passed out of the title, possession, and control of the accuser and into that of the defendant as completely as if the

physical delivery had been to the latter in person. In *Comm. v. Karpowski, supra,* the Pennsylvania court dispensed with express designation of the recipient and assumed analogy with the rule applicable to mere technical passage of title upon sale of goods by delivery to any public carrier, by raising an implication of agency from general mercantile custom. This analogy was declared false, however, in *Comm. v. Schmunk, supra,* and such a delivery held not a consummation of the crime of "obtaining" the property, because the accuser had power to reclaim it at any time before actual delivery to the defendant if he discovered the fraud; hence it had not been fully obtained from the former by delivery to the carrier. That principle, that so long as the defrauded party retains either title or control over the property the crime of obtaining is not consummated, has general support both in reason and authority. *Reg. v. Watson,* D. & B. 348; *State v. Anderson,* 47 Iowa, 142; *Fenton v. People,* 4 Hill, 126; *Reg. v. Evans,* L. & C. 252; *State v. McGinnis,* 71 Iowa, 685, 33 N. W. 338; *Moore v. Comm., supra; State v. Moore, supra.*

Testing the transaction above narrated by these established rules of law, obviously defendant did not obtain by delivery to himself any money, nor, indeed, anything else. If the evidence were sufficient to establish such a direction to Proctor to deliver drafts or money at the postoffice as to constitute an agency in the officials (of which no opinion is expressed), still it would not be until that delivery was made that anything was obtained by defendant or parted with by Proctor. If at any moment prior to that delivery the latter had learned of the falsity of the representations, and therefore ceased to rely on them, he would at that moment have been in possession of everything which he ever had; he would have parted with nothing, and defendant would have acquired neither to himself nor to any one else anything which Proctor previously had. And if, after learning of the fraud, he persisted

in mailing the drafts, his parting with them would not have been in reliance on the false pretenses. If, then, we could consider the delivery to the postoffice the point of time at which Proctor parted with something to defendant, there would still be no obtaining of money, but merely of orders to pay money—an entirely different article of property, for the obtaining of which defendant could be prosecuted notwithstanding either a conviction or an acquittal of obtaining money. *Comm. v. Coe,* 115 Mass. 481. Of this offense defendant is not here charged and cannot be convicted. Very clearly, then, if money was obtained at all by defendant, it was when it was paid to either Haggerty or Bascom by defendant's direction, through the medium of various intervening steps taken by Proctor to carry out that direction. Whether or not an offense of obtaining a draft or check is committed, the crime of obtaining money may also be committed when such order is paid. *Comm. v. Wood, supra; State v. Palmer,* 40 Kan. 474, 20 Pac. 270; *Burton v. U. S.* 196 U. S. 283, 25 Sup. Ct. 243.

There is no evidence that the Haggerty draft ever was paid, so that may be dismissed from further consideration, for proof of obtaining part of the money or property described will justify conviction. *Comm. v. Howe, supra.* There is proof that Bascom actually received money by virtue of these transactions. Whether that was accomplished by his cashing a draft payable to him, or by payment to him by the Bank of Lansing upon delivery by him of title deeds, is probably immaterial here, though it might be material on the question whether defendant obtained the draft. The latter is much more probable, for the draft was payable to the bank, and the sending of money to a stranger, merely accompanied by request for title deeds in his possession, would not accord with the ordinary precautions of a careful business man, such as Proctor seems to be. Whichever method was adopted, the payment was made in Iowa. There, for the first time, did

any money pass to the defendant or to any one for him.   Obtaining the money is the crime charged, of which the false pretenses are only the means.  By all the authorities the crime is committed and must be prosecuted where the property was obtained.   *State v. Shaeffer,* 89 Mo. 271, 1 S. W. 293; *Connor v. State,* 29 Fla. 455, 10 South. 891; *Graham v. People,* 181 Ill. 477, 55 N. E. 179; *Comm. v. Schmunk, supra;* 8 Ency. Pl. & Pr. 858; *Rex v. Buttery,* cited 1 Den. C. C. 551.   Neither a conviction nor an acquittal here of the crime of obtaining money in Vernon county, Wisconsin, would be any defense to a prosecution for obtaining this money in Iowa.   We are convinced that the evidence, most favorably considered, wholly fails to show that the defendant obtained from Proctor any money in Vernon county, and that the verdict of guilty upon that charge cannot stand.

Under two of the assignments of error it is claimed that the court admitted evidence and allowed consideration by the jury of certain facts—notably that the defendant overstated the amount he paid for the land—which are claimed to have no relevancy except as bearing upon the value of the premises.   In this we can discover no error.   The value of the premises was material to be considered by Proctor in deciding whether to part with the money.   Counsel seems to confuse the fact of value with defendant's representations as to that fact.   The latter are deemed immaterial because they are mere matter of opinion, and a person to whom they are made has no right to rely thereon.   Quite the contrary statements of specific facts, although their effect is to convince the hearer merely of the value of the property which he buys or on which he loans.   *Comm. v. Wood,* 142 Mass. 459, 8 N. E. 432.

It is claimed that the court, in instructing the jury, after they had gone into consultation, as to the representations which they must find in order to convict, omitted all the qualifications, including that of materiality.   We do not think this error well assigned, for the court's statement was merely that,

if they found any one of the alleged false pretenses, that would suffice, with the qualifications given in the original charge. We do not think the jury were misled from their previous information that the misrepresentation must have been material.

Reference to H. P. Proctor as the agent of Nicholas Senn is complained of, but without reason, for the testimony of Proctor that he was such agent was wholly uncontradicted.

Further error is assigned on the contention that the verdict is not specific, being general, while there are four counts; two charging that the money was obtained from H. P. Proctor, and two that it was obtained from H. P. Proctor & Son. This objection might be serious if all four counts were good, for an allegation of obtaining money from one person is ordinarily inconsistent with obtaining it from another; but we are convinced that the two counts which charge that it was obtained from H. P. Proctor & Son are bad in failing to specify any person who was deceived or from whom the money was obtained. The words "H. P. Proctor & Son" mean nobody. Of themselves they exclude the idea of an individual, and suggest either a corporation, which would be a legal person, or a firm or copartnership, which is not a legal person. To make such counts good it should have been charged that the representations were made to, and the money obtained from, the persons who composed that firm, although the allegation that they were copartners might have been proper to establish the agency of the one person with whom the transaction was had. *People v. Fish,* 4 Parker, Crim. R. (N. Y.) 206; *State v. Woodson,* 5 Humph. 55; *Burd v. State,* 39 Tex. 509; *State v. McChesney,* 90 Mo. 120, 1 S. W. 841. A general verdict of guilty will ordinarily be ascribed to the good counts, nothing appearing in instructions or otherwise to indicate probability that it was addressed to bad counts. *State v. Kube,* 20 Wis. 238. In this case the counts referring

to H. P. Proctor & Son were practically eliminated by undisputed proof and by instruction that H. P. Proctor was the agent of Senn.

No other assignments of error seem to demand consideration. That first discussed necessitates a new trial.

*By the Court.*—Order denying motion for a new trial reversed, and cause remanded with directions to grant that motion.

MARSHALL, J. (*dissenting*). To constitute the crime of obtaining money under false pretenses these circumstances are essential: First, a false statement of past or existing facts by one person to another. Second, such statement must be reasonably calculated to deceive that other. Third, it must be so designed and induce such other to part with his money. Fourth, such design must be accomplished, such other relying upon such false statement. Fifth, he must part with his money within the jurisdiction where the offense is laid. It is not necessary that the false statement of facts be made directly by such person to such other. It may be made through the medium of an innocent agent. 2 Bishop, New Crim. Law, § 473. It is not necessary that the guilty party shall receive the money or derive any benefit therefrom. The element of obtaining the money designed to be obtained is accomplished when the person sought to be defrauded is actually induced to part absolutely with his right of property in the object of the deceit. *Musgrave v. State,* 133 Ind. 297, 32 N. E. 885; *Comm. v. Harley,* 7 Met. 462. The element of parting with property is satisfied the instant the person designed to be defrauded, through the means resorted to to accomplish such design, actually parts with his property right. Parting with it by placing the property beyond his reach and under the control of the guilty party or his agent completes the offense,—completes it at the place where

such parting with control occurs. *Norris v. State,* 25 Ohio St. 217; *State v. Lichliter,* 95 Mo. 402, 8 S. W. 720; *Comm. v. Wood,* 142 Mass. 459, 8 N. E. 432.

Delivery of property to a common carrier consigned so that title passes at the point of such delivery to the consignee, or delivery of money, or a draft representing the money sought to be obtained, in the United States postoffice, so that the right to the money thereby passes from the control of the owner, is a complete deprivation of such owner thereof. The means, in a physical sense, by which the money is obtained, so long as the owner thereof voluntarily parts therewith, is immaterial. If he is induced to purchase a draft with the money and send the same to some one designated by the guilty party at a distant point by means of the United States mail, as in *Comm. v. Wood, supra,* or is induced to issue an order or check which the guilty party causes to be presented and paid, as in *Roberts v. People,* 9 Colo. 458, 13 Pac. 630; *State v. Palmer,* 40 Kan. 474, 20 Pac. 270, the design by false pretenses to obtain the money and the accomplishment thereof is complete, and complete at the point where the money is in fact parted with.

The foregoing to my mind leaves no doubt as to the evidence in this case establishing the offense charged. The accused made false representations as to existing facts for the purpose of defrauding Senn out of his money. Senn, through his agent, relied on such false statements and was thereby induced to part with the money. The design was fully accomplished by the accused inducing Senn's agent to use the money sought to be obtained by purchasing two drafts therewith and sending the same through the United States mails to two persons designated. Such agent in purchasing the drafts was the agent of the accused and used his money for that purpose. As soon as Senn's money was converted into that of another by means of the purchase of the drafts and the deposit thereof in the United States postoffice and thereby

placed entirely beyond his control, it was obtained from him within the meaning of the statute. It was obtained by the accused. It was obtained through false pretenses. It was obtained at the place where the title thereto and the control thereof was parted with by Senn, through his agent. *The accused obtained the money. Senn lost it, and lost it within the jurisdiction where the offense was laid.* Upon principle and within the authorities cited, particularly *Comm. v. Wood, supra,* it seems to me the accused was properly convicted and that the judgment should be affirmed.