COMMONWEALTH *vs.* J. RICHARD MULREY & another.

Suffolk. December 6, 1897. — January 7, 1898.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Obtaining Money by False Pretences — Indictment — Motion to Quash — Principal and Agent — Conspiracy — Evidence.*

An indictment charged A. and B. with obtaining money by false pretences, consisting of a series of representations, extending over a period of ten months, that B. had furnished a certain city specified numbers of horses, wagons, and men, and that the city owed him stated sums of money for them. It appeared at the trial that A. was teaming clerk in the paving division of the street department of the city; and that it was his business to make returns, from reports of foremen, of horses, wagons, and drivers employed, and of the amounts due for them. These returns, it was alleged, "when duly approved by certain other agents and employees of said city," were presented to the treasurer of the city and paid by him. *Held,* that it was no defence that the city, through its agencies, ought to have found out the discrepancy.

When a corporation is to be informed by one agent of the state of accounts of another, it is not chargeable, as against the former, with knowledge of the very facts of which it was his duty to inform it.

An indictment against A. and B. for obtaining money by false pretences, A. being teaming clerk in the paving division of the street department of a city, whose business it was to make returns, from reports of foremen, of horses, wagons, and drivers employed, and of the amounts due for them, alleged that these returns, "when duly approved by certain other agents and employees of said city," were presented to the treasurer of the city and paid by him; that A. caused the entries to be duly approved; and that the city was induced to pay by his false representations that the approved returns were true. The alleged false pretences consisted of a series of representations that B. had furnished the city specified numbers of horses, wagons, and men, and that the city owed him stated sums of money for them. *Held,* that an objection that the city appeared to have paid its money on the strength of the approval by other agents, and not on the strength of the defendant's false entries, was untenable. *Held, also,* that it was not necessary to allege the names of the approving officers or of the other agents through whom the city was deceived, or to allege any representations to the treasurer. *Held, also,* that it was immaterial whether the foremen's reports

were or were not forwarded by them, and whether their reports did or did not credit B. with the same sums as A.'s return.

A. was teaming clerk in the paving division of the street department of a city, whose business it was to make returns, from reports of foremen, of horses, wagons, and drivers employed, and of the amounts due for them. Certain counts of an indictment against A. and B. alleged false pretences made by the defendants to the city, with intent to obtain the city's money, that B. had furnished to the city in a certain district within a certain time a certain number of horses, carts, and men, and that the city owed B. a certain sum on that account; that the defendants requested the city to pay that sum for the teams so furnished; and that the city, believing these false representations, was induced by them to pay and did pay said sum to B.; and denied that B. had furnished any teams, and that the city owed him any money on that account, all of which, it was alleged, the defendants then knew. *Held,* that these counts were sufficient. *Held, also,* that the allegation in the indictment that the city owed B. no sum whatever need not be proved.

An indictment for obtaining money by false pretences need not set out the words used by the defendant, but it is sufficient to state the effect of the pretence.

To an indictment against A. and B. for obtaining money by false pretences, A. being teaming clerk in the paving division of the street department of a city, whose business it was to make returns, from reports of foremen, of horses, wagons, and drivers employed, and of the amounts due for them, and the alleged false pretences consisting of a series of representations that B. had furnished the city specified numbers of horses, wagons, and men, and that the city owed him stated sums of money for them, it is no defence that the treasurer of the city had no authority, or was not shown to have authority, to make the payments to B.; it appearing that the return, after it was sent by A. to the deputy superintendent of paving, was approved successively by him, by the superintendent of streets, and by the auditor, each relying on the previous signatures.

If A., who was a clerk in the street department of a city, by means of false returns represented that the city owed B. money which it did not owe, and thereafter B. drew the amount, the jury, at the trial of an indictment against A. and B. for obtaining money by false pretences, are warranted in finding that it was by previous agreement, and the judge properly may instruct the jury that there is evidence of a conspiracy for their consideration.

At the trial of an indictment against A. and B. for obtaining money by false pretences, A. being teaming clerk in the paving division of the street department of a city, whose business it was to make returns of horses, wagons, and drivers employed, and of the amount due for them, and the alleged false pretences consisting of a series of representations that B. had furnished the city specified numbers of horses, wagons, and men, and that the city owed him stated sums of money for them, evidence of deposits of money by A., between the dates of the first and last payment made to B., of an amount much too large to be accounted for by his salary is admissible, in connection with independent evidence tending to show a successful fraudulent conspiracy between A. and B.

INDICTMENT, against J. Richard Mulrey and Thomas F. Finneran, for obtaining money of the city of Boston by false pretences. At the trial in the Superior Court, before *Blodgett,* J., the jury returned a verdict of guilty against each defendant; and they alleged exceptions, which appear in the opinion.

*C. W. Bartlett,* (*E. R. Anderson & H. A. Richardson* with him,) for Mulrey.

*H. F. Hurlburt,* (*J. Nelson* with him,) for Finneran.

*J. D. McLaughlin,* Second Assistant District Attorney, for the Commonwealth.

HOLMES, J.    This is an indictment for obtaining money by false pretences.    Shortly stated, the false pretences alleged are a series of representations extending from March 12, 1896, through January 11, 1897, that the defendant Finneran had furnished the city of Boston specified numbers of horses, wagons, and men, and that the city owed him stated sums of money for them.    The counts on which the defendants were convicted each of them covered one fiscal month of the city, beginning on the twelfth of one month and going through the eleventh of the next.    They are seven in number, and the second, tenth, eighteenth, and twenty-sixth counts, called the long counts at the argument, set out the machinery of the fraud in some detail, while the seventh, fifteenth, and twenty-third, called the short counts, content themselves with a more general statement to be referred to later.

There was a motion to quash.    The long counts were assailed on the ground that it appeared that the city had the means in its hands to protect itself.    The defendant Mulrey was teaming clerk in the paving division of the street department of the city. It was his business to make returns, from reports of foremen, of horses, wagons, and drivers employed, and of the amounts due for them.    These returns it is alleged, " when duly approved by certain other agents and employees of said city of Boston," were presented to the treasurer of the city and were paid by him. The false pretences alleged consisted of representing false returns to be true, and it is argued that the city, having control of the agencies through which the returns were made up, and of the sources from which they were made, and having other agents by whom the accounts were to be approved, ought to have found out the discrepancy.    We are of opinion that the argument is unsound.    This is not the case of parties dealing with each other at arm's length, where each may be expected to make use of the means of information within his power.    It is the case of an agent employed and trusted as the very means, the eyes, by

which the city was to know the contents of the reports and the amount which it owed. The rather extreme decision in *Commonwealth* v. *Norton*, 11 Allen, 266, does not apply.

Nor does it matter that the foremen whose reports it was Mulrey's duty to compile were themselves agents of the city, and that as against strangers the city might be held bound to know what all its agents do within the scope of their employment. When a corporation is to be informed by one agent of the state of accounts of another, it is not chargeable, as against the former, with knowledge of the very facts of which it is his duty to inform it. The fiction of identity between principal and agent is used to work out certain liabilities which it is deemed politic to impose upon the former, but it remains a fiction, and is not applied as if it were a fact to all the relations between the two when it leads to absurd results. It would be absurd if the law should pronounce it impossible for an agent to deceive and defraud his principal as to the accounts of another agent, or with regard to the contents of papers technically in the principal's possession.

Next, it is objected to the long counts that the city appears to have paid its money on the strength of the approval by other agents, and not on the strength of the defendant's false entries. But this is not true. It is alleged that the defendant Mulrey caused the entries to be duly approved, and that the city was induced to pay by the defendants' false representations that the approved returns were true. The false representations alleged were made by and concerning the entries after they had been approved. Moreover, it does not appear that the approving agents inspected, or had any duty or power to inspect, the reports upon which the return was based, or that they did not rightfully, as well as in fact, rely wholly upon Mulrey's returns for figures and amounts. On the contrary, the plain meaning of the indictment is that the approval, so far as amounts were concerned, followed, and was expected and intended by the defendants to follow as of course upon Mulrey's statement in the return. We are of opinion that this objection is no better than the others.

It was not necessary to allege the names of the approving officers, or of the other agent or agents through whom the city

was deceived.   The misrepresentations are alleged to have been made to the city, and the machinery by which they were made is immaterial.   We see no reason for laying down a different rule for corporations from that prevailing in other cases of misrepresentation to a principal through his agents, for instance, to a firm through a clerk.   *Commonwealth* v. *Harley*, 7 Met. 462, 467.   *Commonwealth* v. *Call*, 21 Pick. 515, 523.   *Roberts* v. *People*, 9 Col. 458, 466.   The same consideration applies to the twentieth point of the motion.   There was no need to allege any representation to the treasurer.   It is true, that in the inducement to the count the course of proceeding among the different agencies of the city is shown, but the part that charges the offence deals with the city alone.   The city is the party which is alleged to have paid, as well as to have received and to have been deceived by the representations.

We perceive no insufficiency in the statement of the false pretences in the long counts.   It was immaterial whether the foremen's reports were or were not forwarded by the foremen, and whether their reports did or did not credit Finneran with the same sums as the defendant Mulrey's return.   His return was false, and he knew it to be false.   It would not help him if a foreman, and not he himself, had invented his falsehood.

The short counts also seem to us sufficient on their face. They state false pretences made by the defendants to the city, with intent thereby to obtain the city's money, that Finneran had furnished to the city in a certain district within a certain time a certain number of horses, carts, and men, and that the city owed Finneran a certain sum on that account.   They also state that the defendants requested the city to pay that sum for the teams so furnished, and that the city, believing these false representations, was induced by them to pay and did pay the said sum to Finneran.   They then deny that Finneran had furnished any teams, and that the city owed him any money on that account, all of which they allege the defendants then knew.   The pretences are stated specifically enough, as is also the mode in which they effected their purpose.   See 2 Russ. Crimes, (6th ed.) 531, and note (*o*) ; *Regina* v. *Lee*, 9 Cox C. C. 460 ; *Commonwealth* v. *Hooper*, 104 Mass. 549 ; *Commonwealth* v. *Howe*, 132 Mass. 250, 258 ; *Commonwealth* v. *Dunleay*, 153 Mass. 330 : *People* v. *Dimick*, 107 N. Y. 13, 30

Without going into further detail, it is enough to say that we are of opinion that the motion to quash properly was overruled. The intent to defraud the city is alleged sufficiently in all the counts.   See *Commonwealth* v. *Howe*, 132 Mass. 250, 258.

Several rulings were asked and refused after the evidence was in.   The first which we shall take up, by reason of its connection with the short counts, is to the effect that the evidence does not support these counts, but that there is a variance between the evidence and the counts, because in these cases as in the others the instrument of deception was a false return in writing, and it is not set out.   It is argued that the short counts, if good, can be supported only by proof of oral representations. But notwithstanding what is said in *Dwyer* v. *State*, 24 Tex. App. 132, 137, cited by the defendants, (1 Stark. Crim. Pl. 97, 98,) we regard it as unnecessary to set out the words used by the accused.   " It is sufficient to state the effect of the pretence correctly, and the very words used need not be stated."   2 Russ. Crimes, (6th ed.) 531.   If this be so, there seems to be no reason for requiring it to be set forth, whether the pretence was spoken or written.   See *The Queen* v. *Coulson*, 1 Den. C. C. 592; *Regina* v. *Woolley*, 1 Den. C. C. 559, 561; *Regina* v. *Lee*, 9 Cox C. C. 460; *Regina* v. *Cooper*, 13 Cox C. C. 617.   And if it is not necessary, then these counts, which purport to state only the effect of the pretences, convey no implication whether they were oral or in writing.   Moreover, in this case the last false pretences occurred when, the approved return having been sent to the treasurer's office, pay was demanded in accordance with it.   Without the demand and acceptance of pay, no harm was done and no crime committed.   The demand impliedly affirmed the correctness of the account, and that the alleged debt was due.   It may be regarded as taking all the preparations up into itself, and as a representation which covered the whole ground.   At the same time it was the immediately efficient cause or inducement of the mistaken payment by the city.   It is true that without the preparations for it, — unless it had been made credible by the false return, — it would not have been likely to prevail.   Nevertheless, the final fact was that it did prevail, and it is not necessary to show more, or what laid a foundation for its success. See *Regina* v. *Lee*, 9 Cox C. C. 460.

A more general ruling was asked that the government had not made out a case on any of the counts. Some of the grounds on which this request is supported have been disposed of in dealing with the motion to quash. Another, not yet touched, is that the treasurer of the city had no authority, or was not shown to have authority, to make the payments to Finneran, that is, to pay money which was not due, and that therefore the property in the money did not pass from the city, and the crime was not made out. We do not suppose that the argument was meant to go so far as to deny the authority of the treasurer in case the approved return had been correct, for that is plain. But if the treasurer had authority to pay out the city's money in the latter case, he was authorized to pay it out when he reasonably supposed that state of facts to exist. Or, more concretely, when he received one of these returns approved by all the proper persons, including the auditor, and paid it, supposing it to be correct, his authority did not depend on the facts turning out to be as certified, but was established, both for the purpose of exonerating him and of passing property in the money, by the form of the return.

It is true that what we last have said gives force to the defendants' contention that the cause of the payment by the treasurer was the approval of the return by the auditor, or, taking it on the evidence, a draft by the auditor which accompanied the return. But, apart from what has been said as to the final false pretence implied by the demand of payment after the approval, the contention has no bearing on the motion to quash, because the indictment does not deal with the treasurer, but with the city, and ignores, as it properly may, all the internal machinery by which the city acted. On the other hand, as applied to the evidence, the argument is met by the consideration that the belief and act of the treasurer were only part of the machinery which worked out a fraud on the city. The whole machinery was set in motion, as it was intended to be, by the false return, which deceived the superintendent and auditor into approval, and induced the auditor to draw upon the treasurer, and 'it was enabled to produce its effect by the demand of payment. The result, therefore, properly was attributed to the defendants' acts, which began and ended the fraud.

The evidence showed that the return, after it was made out by Mulrey, was sent to the deputy superintendent of paving and approved by him. He might have compared it with the foremen's reports, but he never did. It does not appear that it was his duty to do so. The jury well might find that Mulrey acted in expectation of his statement being accepted and relied on, and that it was relied on. The report then was approved by the superintendent of streets, and then by the auditor, each relying on the previous signatures. There is nothing in these facts that requires further discussion than has been devoted to the motion to quash.

We do not think that it needs argument to show that, if Mulrey falsely pretended that the city owed Finneran money which it did not owe, and thereafter Finneran drew the amount, the jury were warranted in finding that it was by pre-established harmony rather than by fortuitous concurrence. The judge was asked to rule on the sufficiency of the evidence, and of course he did not transcend his province, or charge upon the facts, by instructing the jury that there was evidence of a conspiracy for their consideration. If there was a conspiracy, the act of one was the act of both. *Commonwealth* v. *Harley*, 7 Met. 462.

It is denied in the indictment that the city owed Finneran any sum whatever. The court instructed the jury that this allegation need not be proved, giving at the same time correct instructions as to what must be proved. This ruling was right. The broad denial is not in any sense descriptive of the offence, and obviously the fact of such indebtedness, if there was any evidence of it, is not inconsistent with the commission of the crime. See *Commonwealth* v. *Lee*, 149 Mass. 179, 185.

Exceptions were taken to the admission of evidence of deposits of money by Mulrey, between the dates of the first and last payment made to Finneran, of an amount much too large to be accounted for by his salary, which was twelve hundred dollars a year. The evidence by itself of course did not prove criminal conduct. But it is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and in turn may corroborate the conclusion which would be drawn from the other

facts.  *Commonwealth* v. *O'Neil*, 169 Mass. 394.  It is possible that Mulrey may have had an independent fortune from which his deposits came, but that was open to him to prove if he saw fit, and was not the probability with regard to one who was working in his place and for his pay.  The evidence properly was admitted, in connection with independent evidence tending to show a successful fraudulent conspiracy between Mulrey and Finneran.  See *Commonwealth* v. *Montgomery*, 11 Met. 534, 537, 538; *Boston & Worcester Railroad* v. *Dana*, 1 Gray, 83, 102; *Hackett* v. *King*, 8 Allen, 144; *State* v. *Grebe*, 17 Kans. 458; *State* v. *Thompson*, 87 Iowa, 670; *Perrin* v. *State*, 81 Wis. 135, 140.

The supplemental bill of exceptions is disposed of by *Commonwealth* v. *Brown*, 167 Mass. 144, and *Commonwealth* v. *Crowley*, 168 Mass. 121.  It was not pressed.  We have examined the whole record in view of the defendants' statement that they waive nothing, and we discover no error.

*Exceptions overruled.*