Turner, J.
After a careful review of all the evidence, we affirm the judgment of the Court of Appeals in reversing the judgment of the trial court on the second count in the indictment for the reason that there was a failure of proof to support the judgment of the trial court.
'We also affirm the judgment of the Court of Appeals in reversing the judgment of the trial court op the fourth count in the indictment. However, we reverse the judgment of the Court of Appeals in remanding the case to the trial court for a new trial on the fourth count for the reason that the evidence fails to show that the crime alleged occurred in Clark county where the indictment was returned and trial had. Therefore, defendant’s motion to direct a verdict of not guilty on such fourth count, made at the *267 close of the state’s case and renewed at the conclusion of all of the evidence, should have been sustained.
In passing on such motion at the close of the state’s case, the trial court said: ‘ ‘ There is no evidence where the car was delivered to Mr. -Nevius, although the title seems to indicate he acquired it. I think a reasonable inference ,seems to be, in the absence of any evidence that he was in Dayton and acquired it there, that it was delivered to him at his home or in the city where he lives, because that is naturally where he would use it.”
We are of the opinion that such “inference” is mere speculation. The burden was on the state to show that Nevius accepted the automobile in Clark county.
It does not follow from the absence of any evidence in the state’s case that Nevius acquired the automobile in Dayton (Montgomery county) that he accepted such automobile in Clark county.
Under the trial, court’s stated understanding of the state’s evidence that there was no evidence where the car was delivered, it was the duty of the trial court to sustain defendant’s motion to direct a verdict and dismiss defendant on the fourth count in the indictment. We agree with the trial court that the state’s case disclosed no evidence showing where Nevius accepted the alleged bribe. There was evidence that Nevius had been with Parisi in Dayton at different times. Dayton is but a few miles from Springfield.
When defendant’s motion was renewed at the closé of all the evidence, the only evidence in the record on the subject of the venue of the alleged offense was the testimony of Nevius that Parisi delivered the car to him at a garage in Dayton (Montgomery county) and that he (Nevius) drove it home from Dayton.
At the close of all the evidence, there was a'failure of proof that Nevius had accepted the alleged bribe in *268 Clark county. The state’s witness Boush, who brought the car from Pennsylvania to Dayton, testified that he sold and delivered the automobile to Parisi in Dayton. Boush testified further that he had no dealing with Nevius and had never seen him until the trial.
Under such circumstances and with the defendant’s testimony that he acquired the car from Parisi in Dayton, the trial court would have been warranted in committing Nevius to await a warrant for his arrest from Montgomery county upon the charge contained in the fourth count of the indictment.
Section 13442-6, General Code, provides:
“If on the trial of a criminal cause, it shall appear that the offense was committed within the exclusive jurisdiction of another county of this state, the court must direct the defendant to be committed for such time as it deems reasonable, to await a warrant from the proper county for his arrest, but if the offense is a bailable offense the court may admit the defendant to bail with sufficient sureties conditioned, that he will, within such time as the court may appoint, render himself amenable to a warrant for his arrest from the proper county; and if not sooner arrested thereon, •will appear in court at the time fixed to surrender himself upon the warrant if issued.
“The clerk shall forthwith notify the prosecuting attorney of the county in which such offense was committed, in order that proper proceedings may be had in the case. A defendant in such case shall not be detained in such jail nor held under bond for a period of more than ten days.”
Section 10 of Article I of the Constitution requires that an accused be tried by a jury of the county in which the offense is alleged to have been committed. (No question of change of venue is here involved.)
A grand jury may inquire of and present only such offenses as have been committed within the county for *269 which such grand jury was impaneled and sworn. (Section 13436-5, General Code.)
In the case of State v. Chalikes, 122 Ohio St., 35, 170 N. E., 653, it was held:
' ‘ 1. An indictment returned by a grand jury in one county of this state, charging a felony alleged to have been committed in another county of the state, is subject to demurrer.
“2. A statute which attempts to provide the place of trial of an offense for which a jury may be demanded in a county other than that in which the offense was committed is violative of Section 10 of Article I of the Constitution of Ohio, and, to that extent, is void.”
In the case of State v. Knight, 54 Ohio St., 330, 43 N. E., 281, it was held:
“A prosecution against a county officer for soliciting a bribe outside of his county, must be in the county where the bribe was solicited, and not in the county where he holds office.”
The crime charged against Nevius could be established only by proof of the acceptance of the bribe. If such acceptance did not occur in Clark county, he could,not legally be prosecuted in Clark county.
Section 12823, General Code, provides as to the acceptance of a bribe:
“* * * and whoever, being * * * a state or other officer, # # * either before or after his election, qualification, appointment or employment, solicits or accepts any valuable or beneficial thing to influence him with respect to his official duty, or to influence his action, vote, opinion or judgment, in a matter pending, or that might legally come before him, shall be imprisoned in the penitentiary not less than one year nor more than ten years.”
The judgment of the Court of Appeals reversing: the judgment of the trial court on the sixth count in *270 the indictment must be reversed. We are of the opinion that the state proved beyond a reasonable doubt the crime alleged in snch sixth count, and that no prejudicial error occurred in the trial court in respect thereof.
Section 13437-3, General Code, provides that an indictment may charge two or more different offenses connected together in their commission or two or more different offenses of the same class of crimes or offenses under separate counts, and that a verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count.
In the case of Stoughton v. State, 2 Ohio St., 562, Judge Thurman said at page 567: “And we are not prepared to depart from the rule, that has hitherto prevailed in Ohio, that.one good count in an indictment will support a general verdict of guilty. Forsythe v. The State, 6 Ohio, 25.”
, We are of the opinion that under the facts and circumstances of this case no prejudice to Nevius resulted from the failure to withdraw from the jury the evidence pertaining to the second and fourth counts of the indictment.
The following language which we adopt from the opinion of the Court of Appeals sets forth pro tanto our own view of the evidence:
“In support of this [second] count, which was equally applicable to all the counts, the state offered evidence that Parisi, Schear and one Melvin Thomas had been prosecuted by appellant [Nevius] in 1938, on a charge of conducting a gambling establishment, known as Tecumseh Park in Clark county. They were convicted. They then moved to the adjoining county of Miami, where they continued to conduct commercial gambling until 1940, when they moved to the place known as ‘Silver Dollar,’ close to the line between Clark and Greene counties, where they continued to *271 conduct gambling as a business and from which they spread their gambling activities over a wide area embracing several counties.
“Competent evidence was offered tending to prove that from 1940 to December, 1944, Parisi, Schear and Thomas operated Silver Dollar as a gambling place so openly and on such a large scale that it was generally known that gambling was carried on there. There was testimony that appellant visited the Silver Dollar frequently and stayed on these visits from fifteen minutes to half an hour. There was other evidence that appellant had information, which, if pursued, would have disclosed that gambling was going on at the Silver Dollar, and evidence of failure on his part to make any effort to discover the truth, and, if that disclosed gambling, to proceed in any way against the guilty. The only reason for failure to proceed given .at any time was that the Silver Dollar, the focal point from which the gambling proceeded, was located in Greene county. * * *
‘ ‘ So there is abundant evidence that there was gambling in progress in violation of law, and a failure by the appellant to proceed to suppress it. * * *
“There was also evidence that the appellant visited the Silver Dollar two or three times a month for a period of more than a year. * * *
“With the data of money handled before him, a comparison was made with appellant’s known sources of income by an expert who testified that there was ant excess of expenditures over known income of more than $12,000 during the period from January 1, 1941» to June 30, 1944.”
In addition, there was evidence that sometimes Parisi and/or Schear were at the Silver Dollar during such visits by the accused. Thomas “was very nearly always there.” On these visits Nevius would remain but a short time.
*272 There was also evidence that the accused was living beyond his means and during the time in question had spent moré than $12,000 in excess of his income during the same period. While the accused attempted to account for some of the “excess,” the credibility of his testimony was for the jury. The accused kept no books or records and deposited but a portion of his money in any bank. In other words, using a checking account was the exception and not the rule. He used cash money instead of checks. From these facts, the jury was justified in drawing the inferenee1 that the purpose of accused’s visits to the Silver Dollar was for accepting money to influence him in respect of his official duty, i. ’ e., for his failure to prosecute the gamblers or otherwise to interfere with their illegal enterprise. From the fact that he spent more money than was otherwise received by him, the jury was warranted in inferring -from the proven facts that he got such additional money from the gamblers Parisi and Schear.
The jury had before it evidence to sustain the conclusions :
(1) That Nevius, the prosecuting attorney, not only knew Parisi, Schear and Thomas, but was on good terms with them, especially Parisi.
(2) That Nevius knew that Parisi, Schear and Thomas were gamblers who were openly conducting the gambling house known as the Silver Dollar.
(3) That the Silver Dollar gambling house was located in Clark county.
(4) That Nevius, the prosecuting attorney of Clark county, made no attempt to suppress the open gambling conducted at the Silver Dollar.
(5) That Nevius visited the Silver Dollar two or three times a month for a period of more than a year. Parisi, Schear or Thomas was usually at the Silver Dollar at the time of such visits.
*273 (6) That Nevius lived beyond his means and had excess expenditures over his income of more than $12,000, during the period from January 1, 1941, to June 30, 1944.-
(7) That the money for such excess expenditures came from Parisi and/or Schear and was accepted by Nevius to influence him with respect to his official duties as prosecuting attorney of Clark county.
(8) That the acceptance of such money took place in Clark county, Ohio.
As to the question of the venue of the gambling operations rather than the venue of the corpus delicti of the bribes involving automobiles, the following observation of the trial judge in passing upon defendant’s motion in arrest of judgment is pertinent: “Moreover, as convincingly argued by counsel for the state, if this defendant accepted bribes for permitting the ‘numbers’ gambling to be operated all over the county without interference, it is not important or material where the headquarters of the gambling-operations were located.”
Of course, the venue of where the bribe was accepted is material and we have already indicated that the jury had evidence before it to sustain the conclusion that the acceptance of the bribe referred to in the sixth count of the indictment occurred in Clark county, Ohio.
The credibility of the witnesses and the weight to be given to their testimony were questions for the jury. Compare United States v. Manton, 107 F. (2d), 834.
The following observations of Circuit Judge Patterson in the course of his opinion in United States v. Jackskion, 102 F. (2d), 683, 684, are apposite here:
“It is the general view that where a defendant is on trial for a crime in which pecuniary gain is the usual motive, evidence of the sudden acquisition of money by the defendant is admissible, even though the source *274 of the money is not traced [citing cases]. As pointed out by Mr. Justice Holmes in Commonwealth v. Mulrey, supra [170 Mass., 103, 49 N. E., 91], such evidence may, when taken with proof of other facts, have a logical tendency to prove criminal misconduct.” Compare People v. Connolly, 253 N. Y., 330, 171 N. E., 393.
The Court of Appeals correctly stated the question as follows:
“The legal question presented is whether the jury having found that the total income was larger than from known sources could draw the conclusion that the excess represented money paid appellant [Nevius] by Parisi or Schear to influence appellant in the discharge of his duty as prosecuting attorney.”
The Court of Appeals came to the conclusion that the direct and circumstantial evidence was insufficient to sustain the verdict without piling inference upon inference. "With such conclusion we cannot agree. We are of the opinion that the proven facts and circumstances in this case form a sufficient basis for an inference of guilt beyond a reasonable doubt. It was not necessary for the jury to base an inference upon an inference. The inference of guilt is the only probable or natural explanation of the proven facts and circumstances. As stated by Judge Wilkin in Ensel v. Lumber Ins. Co. of New York, 88 Ohio St., 269, 282, 102 N. E., 955, “an inference is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.”
\ Section 13444-1, General Code, provides:
"' ‘£ The rules of evidence in civil causes insofar as the same are applicable, shall govern in all criminal causes except as otherwise provided in this code.”
In the case of Summons v. State, 5 Ohio St., 325, Chief Justice Bartley said at page 343: “The general rules of evidence, the sole object of which is the ascer *275 tainment of truth, are usually the same both in civil and in criminal cases.”
' In 17 Ohio Jurisprudence, 181, Section 139, it is said: “There can be no question at the present day as to the competency of circumstantial evidence. Circumstantial. evidence is frequently resorted to in criminal cases, for in many instances the fact of the crime can only be proved by such evidence.”
Bribery is one of the crimes where it is frequently, if not usually, necessary to rely on circumstantial evidence.
In 1 Hanna Ohio Trial Evidence, 6, Section 7, it is correctly said:. “A fact may be proved to a moral certainty by circumstantial evidence as well as by direct evidence but the facts must be proved from which the inference may be drawn, for an inference of fact can not be predicated upon another inference, but must be predicated upon a fact supported by evidence. ’ ’
Having found that the corpus delicti and venue thereof pertaining to the sixth count were properly established, we turn to the other claimed errors.
The Court of Appeals found error, to wit:
“ (3) In the admission of the testimony of Dorothy Miller, that Joseph Parisi stated to her in the absence of the defendant that ‘You know we have things fixed with the prosecuting attorney and the sheriff,’ there’ being no evidence that Parisi was a co-conspirator and furthermore, the statement was not in furtherance of the purpose of any conspiracy, the testimony being, therefore, hearsay evidence and incompetent.”
We need not pass upon the question of whether a bribe giver and a bribe taker are ipso facto conspirators. Where the crime charged grows out of the conspiracy or the conspiracy grows out of the crime, the statements of a coconspirator in furtherance of the *276 common design óf the conspiracy may be shown when a prima facie case of such conspiracy is made.
We are of the opinion that there was presented a prima facie case of conspiracy between Nevius and the gamblers, Parisi, Schear and Thomas, to run the Silver Dollar in violation of law and without molestation by Nevius. The bribe was given in furtherance of such conspiracy. See Goins v. State, 46 Ohio St., 457, 21 N. E., 476; State v. DeRighter, 145 Ohio St., 552, 62 N. E. (2d), 332.
It is not necessary that the conspiracy be to commit the crime charged in the indictment. As held in Goins v. State, supra, it is not necessary that “the conspiracy be one to commit the identical offense charged in the indictment, or even a similar one; it being enough that the offense charged in the indictment was one which might have been contemplated as a result of the conspiracy. ’ ’
In the DeRighter case, supra, this 'court said in its per curiam opinion at page 559:
“This record discloses evidence which, if believed, shows a conspiracy t'o elect a particular candidate to the, office of city councilman, and it is contended by the state that the registration and voting in other precincts constituted an important part of the unlawful enterprise. This evidence was properly admitted.” (Italics ours.) There, as in the instant case, the crime charged was but an incident growing out of the conspiracy.
Certainly where a prosecuting attorney conspires with gamblers to the end that he will not molest their gambling enterprise, bribery is the natural and probable inception or outcome. The statement of one of such conspirators in furtherance of the gambling conspiracy is admissible in a prosecution of the official for accepting a bribe to influence him with respect to his official duty toward the gambling conducted by *277 his coconspirators, even though such accused official be not present when such statement was made.
In the case of State v. Huffman, 86 Ohio St., 229, 99 N. E., 295, Ann. Cas. 1913D, 677, this court held:
“Evidence which tends to show a conspiracy on the part of the defendant and others to fabricate- a defense to an indictment for bribery, is competent in chief. The fact that such evidence is of a circumstantial nature and not direct, does not render it incompetent, where it otherwise conforms to the established rules of evidence in cases of conspiracy.”
We are, therefore, of the opinion that the Court of Appeals erred in holding that the above-mentioned testimony of Dorothy Miller was incompetent.
The fourth and fifth grounds of error are as follows :
“(4) The court also erred in permitting the state to ask Melvin Thomas, a witness called by it, the following question: ‘Didn’t you make a statement to a Mrs. Miller the reason that you moved to Clark county was because you had things fixed with the sheriff and prosecuting attorney of Clark county?’, the same being an unsworn statement of the witness and incompetent on that ground.
“ (5) The court erred in the admission of the testimony of Dorothy Miller that Melvin Thomas, in the absence of the defendant, had stated to her that the reason he and his associates had moved to Clark county was because they had the sheriff and prosecuting attorney of Clark county fixed, said testimony •being hearsay evidence and not the statement of a coconspirator in pursuance of the common design of conspirators, and being impeachment by the state of its own witness.”
Both of these alleged errors 4 and 5 are based upon the holding by the Court of Appeals that no conspiracy was proven. As we hold that a prima facie *278 case of conspiracy was shown, and as Melvin Thomas was one of the conspirators and as the testimony pertained to the furtherance of the conspiracy to conduct gambling in defiance of law and unmolested by the prosecuting attorney, we cannot agree with such holdings of the Court óf Appeals.
A conspiracy need not be established by direct evidence. It may and generally must be proved by, a number of indefinite acts, conditions and circumstances which may vary according to the purpose to be accomplished. 11 American Jurisprudence, 568, Section 37.
In 15 Corpus Juris Secundum it is said at page 1043, Section 29:
“The fact of the conspiracy may, of course, be shown by direct evidence, and should be so proved if this character of evidence is available; but since direct evidence is ordinarily in the possession and control of the alleged conspirators and seldom can be obtained, a conspiracy usually is susceptible of no other proof than that of circumstantial evidence, and therefore it is a well-settled rule tha,t proof, by direct and positive evidence is not necessary, and that' circumstantial evidence, that is, evidence of the acts of the alleged conspirators and of the circumstances surrounding the transaction which is the basis of the charge, is admissible to prove the conspiracy charged; and it is not necessary that any particular order be followed in adducing such proof, it being sufficient if the connection and inculpating significance of the facts appear from the whole evidence in whatever order it may be given.”
The foregoing was said of conspiracy as a crime per se, i. e., where conspiracy was the corpus delicti and proof had to be adduced accordingly rather than as here where a prima facie case only of the conspiracy need be shown to render the declaration of a *279 eoconspirator in furtherance of the common design admissible. In Ohio' the introduction of testimony tending to prove a conspiracy is governed by the rules of evidence only. Thomas denied the statement. The bill of exceptions discloses that there is some confusion as to whether the objection to the question propounded to Thomas was withdrawn, but this is immaterial in view of our holding.
As to the impeachment of Thomas, the state’s witness, we are of the opinion that under the circumstances of this case where Thomas had admitted on the witness stand that he was the manager of the Silver Dollar and participated in its profits and a prima facie case was made that Thomas was one of the conspirators, there was no abuse of discretion by the trial court. Besides, such testimony of Dorothy Miller was admissible even if Thomas had not testified. The state had the right to offer this particular evidence no matter how Thomas had testified on the same subject. Thomas had received an immunity bath under Section 12824-1, General Code.
The Court of Appeals found that the trial court erred “in permitting an expert to testify as to the result of his examination of copies of the income tax returns of Joseph Parisi and Ralph Schear, the same being irrelevant and incompetent in this action against the defendant.” Here again the question turns upon whether there was a prima facie showing of conspiracy. We are of the opinion that the trial court committed no error in the admission of this evidence. This witness was employed by Parisi and Schear to prepare their income tax returns. Such evidence tended to show the extent of the conspiracy, the profits therefrom and the incentive of Parisi and Schear to pay Nevius, the prosecuting attorney, for not molesting their profitable but illegal enterprise. It reflected as well upon the probability that the bribe had been given *280 as an incident of such conspiracy.
The seventh and final ground for reversal reads:
“7. Misconduct of counsel for the state in stating their opinion that the defendant was guilty and by implication stating that the opinion was based on investigation made by them and not limited to the.evidence in the case, and in referring tb incidents of the war in which the United States was engaged having a natural tendency to arouse the passion and prejudice of the jury.”
At first blush we are here confronted with a serious question, i. e., the expression of personal opinion. While the record discloses that defense counsel interrupted this particular argument several times with objections and exceptions and suggested corrections, yet no objection was made to the matter now urged as error. The trial court, therefore, had no opportunity to pass upon this question.
As stated by Judge Jones in Patterson v. State, 96 Ohio St., 90, 104, 117 N. E., 169, L. R. A. 1918A, 583:
‘ ‘ Counsel should not be allowed in a court of error to avail themselves of an exception of which the court was not apprised.”
The first notice taken of this matter by defense counsel was in the Court of Appeals where they filed a motion resulting in a consent entry ordering the amendment and enlargement of the bill of exceptions so as to include the arguments of two of the state’s counsel. No argument of any of the. defense counsel is contained in the record. The defendant himself made an argument which is not contained in the record. Therefore, neither the Court of Appeals nor this court has had any opportunity to ascertain whether there was any provocation for the expression of opinion under the circumstances. We have read carefully the entire argument in question and are of the opinion that such argument was made on the basis of the evi *281 deuce which was quoted from freely and not on counsels’ opinion. In other words, it does not affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial. (Section 13449-5, General Code.)
In the opening statement on behalf of the state it was said: “In order to be extremely fair to the defendant, Jerome Nevius, we have agreed that he be tried separately and apart from the gamblers, so that influence would be left out, as far as possible, so that this case here, ladies and gentlemen, can be decided solely upon the facts as they will be produced in this courtroom against the defendant Nevius.”
The following excerpts (in sequence) from the court’s charge will show that it was impressed upon the jurors that the case was to be decided upon the evidence adduced and the charge of the court:
“As jurors you are sworn to return a true verdict according to the law and the evidence in this case.”
“If, during the course of the trial, the court has said or done anything which you may have considered as an indication of the court’s view of the issues of fact in this case, you are hereby instructed to completely disregard it.”
“The evidence consists of what the witnesses and the defendant have been permitted to state to you under oath from the witness stand, together with the exhibits which have been admitted as evidence during the progress of the trial.”
“I remind you again óf that which was emphasized during your examinations before you were sworn as jurors in this case, namely, that you must lay aside and entirely eliminate from your minds and deliberations any impression or opinions you may have received or formed from newspaper articles or other sources, prior to or aside from the trial of this case *282 upon its merits and upon the evidence submitted to you in this courtroom. ’ ’
“* * * and that ultimate fact is whether or not the defendant has been proven guilty beyond a reasonable doubt of one or more of the crimes charged against him. ’ ’
“These exhibits and the oral testimony constitute the evidence in this case and it is your duty to consider the evidence in this case and from it and under these instructions return your verdict.”
‘ ‘ On several occasions during the course of this trial the attorneys in the case, as well as the court, engaged in remarks or conversation between themselves, but which were in the presence and hearing of the jury. You are to wholly disregard such remarks or conversations and not to consider them in any respect as evidence, putting them out of your minds and giving them no consideration whatever in your deliberation upon the case.”
“You are also instructed that any and all evidence, as well as all questions and answers which was offered by the state or the defendant, to which objections-were sustained or which were later ruled out by the court, is not to be considered by the jury as evidence in this case and is also to be put out of your minds and given no weight or consideration in your deliberations and no inferences whatever drawn therefrom.”
“During the trial some mention has been made of political affiliations. I am confident that none of you will permit any party sympathy or prejudice to influence your action. Let all party ties and other affiliations be forgotten, and let the question of the guilt or innocence of the defendant be considered and determined only upon the evidence and the law.”
At the close of the charge the trial judge inquired of counsel “Gentlemen, is there anything further you *283 wish the jury instructed upon?” to which counsel for defense answered “I have no suggestion.”
While there is some similarity here to the case of State v. Thayer, 124 Ohio St., 1, 176 N. E., 656, 75 A. L. R., 48, in that case “counsel for the accused promptly objected and moved the court order a mistrial; thereupon the prosecuting attorney said: ‘We feel that it is entirely just in the light of the evidence.’ The court overruled the motion for mistrial and exception was saved.”
We do not think that the Thayer case can be said to be controlling in the instant case but rather it is our opinion that we should be guided here by the case of Scott v. State, 107 Ohio St., 475, 141 N. E., 19, where it was held:
“Improper remarks of counsel for the state during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to and exception taken; otherwise error cannot be predicated upon the remarks alleged to have been improper.”
The case of Hayes v. Smith, 62 Ohio St., 161, 56 N. E., 879, furnishes no guide in the instant case.
As to the reference to incidents of the war in which the United States was engaged, neither the journal entry nor the opinion of the Court of Appeals points out the particulars of the matter there in question. However, in the brief of counsel for Nevius reference is made to parts of the opening argument of counsel for the state to be found in the original bill of exceptions. The full argument is not set out. The following is all that is referred to:
“Mr. Leis [state’s counsel]: * * * And let’s not make a saint of Joseph Parisi by talking about this government job he had. There is only one reason why; that was to keep himself out of the army.
“Mr. Herbert [defense counsel]: We take exeep *284 tion to that. No evidence in the record to that effect.
“The Court: Counsel may draw reasonable conclusions and inferences from the evidence.
“Mr. Herbert: Exception.
“Thereupon Mr. Leis, counsel for the state, continued his argument and made the following’ statement :
“* * * There was nothing in the world, ladies and gentlemen, to prevent Joe Parisi from taking the stand. He would not have incriminated himself one bit, to have got upon this stand and said: £Yes,
Nevius’----
“Mr. Herbert: Objection.
“The Court: Counsel is privileged to argue the evidence and also the law, so long as the law is applicable.
“Mr. Herbert: Exception.”
The foregoing is all of the argument that is contained in the record and it will be noted that so far as the record shows or the briefs of appellee contend, the last' above-quoted statement of Mr. Leis was never finished. We see no error in the trial court’s ruling in this respect. The foregoing is the only matter in respect of reference to incidents of the war to which our attention has been called. However, we have carefully read the amended bill of exceptions containing the argument of two of state’s counsel and find no prejudicial error therein.
In its opinion upon this seventh ground of reversal the Court of Appeals said: “Whether these incidents were so prejudicial as to require a reversal in a case where guilt is clear might be questioned, but we think they were prejudicial in this case, and should not be repeated on a retrial.”
Section 13449-5, General Code, provides:
“No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction *285 be reversed in any court in case of any inaccuracy or imperfection in the indictment, information or warrant, provided that the charge be sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him; nor for any variance between the allegations and the proof thereof unless the accused is misled or prejudiced thereby; nor for the admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby; nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial.”
Seasonable doubt is defined in Section 13442-3/ General Code, as follows:
“It is not a mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.”
It is our opinion that the jury had before it evidence which justified the jury in returning a verdict of guilty on the sixth count in the indictment. We are of the further opinion that it does not affirmatively appear from the record that the accused was prejudiced or prevented from having a fair trial.
The Court of Appeals specifically found in its journal entry that outside of the errors above discussed, “no other error is apparent upon the record.”
Summarizing:
*286 1. The judgment of the Court of Appeals in reversing the judgment of the trial court on the second count in the indictment and dismissing the defendant should'be and hereby is affirmed.
2. The judgment of the Court of Appeals in reversing the judgment of the trial court on the fourth count in the indictment should be and hereby is affirmed.
3. The judgment of the Court of Appeals in remanding the fourth count of the indictment to the trial court for a new trial should be and hereby is reversed and the defendant discharged on such fourth count from prosecution in Clark county, Ohio.
4. The judgment of the Court of Appeals on the sixth count in the indictment should be and hereby is reversed and the judgment of the trial court should be and hereby is affirmed.
The cause is remanded to the Court of Common Pleas of Clark county, Ohio, for further proceedings not inconsistent with this opinion.

Judgment affirmed in part and reversed in part.

Weygandt, C. J., Matthias and Bell, JJ., concur.