Cowin, J.
Defendants, Celies Dessin (“Dessin”) and William Jerome (“Jerome”), have been indicted for larceny over $250 (G.L.c. 266, §30), motor vehicle insurance fraud (G.L.c. 266, §11 IB), and conspiracy (G.L.c. 274, §7).[1] They now move to dismiss the indictments on the basis that the grand jury had insufficient evidence to support those indictments; and Jerome alone argues that the grand jury proceedings were impaired both by the Commonwealth’s unfair and misleading presentation of the evidence and by the Commonwealth’s failure to introduce exculpatory evidence. For the reasons set forth below, defendants’ motions are denied.
BACKGROUND
The Commonwealth presented the following evidence to the grand jury. Dessin, the owner and instructor of a driving school, was involved in numerous accidents pertinent to this motion on February 22, 1991 (Accident #1), November 30, 1991 (Accident #2), February 4, 1992 (Accident #3), March 30, 1992 (Accident #4), June 24, 1993 (Accident #5), and November 2, 1993 (Accident #6). Dessin claims that, in each of the accidents, his vehicle was rear-ended by another vehicle, causing him to sustain injuries, including back, neck, shoulder and leg injuries. Jerome, an attorney, represented Dessin in his claims for personal injuries arising from Accidents #3, #5 and #6.[2] Dr. Gary Sbordone (“Dr. Sbordone”), a chiropractor, treated Dessin for injuries allegedly sustained in Accidents # 1, #2, and #4 (as well as for injuries sustained in motor vehicle accidents on June 5, 1990 and September 26, 1990). Dessin was also treated by Emilio Jacques, M.D. (“Dr. Jacques”), an orthopedist, and Hari Khalsa, D.C. (“Dr. Khalsa”), a chiropractor, for injuries sustained in Accidents #5 and #6.
In Accident #1, Dessin initially treated at Mount Auburn Hospital and reported to the emergency room staff that he had no relevant previous medical history. (However, Dr. Sbordone had treated Dessin for injuries sustained in motor vehicle accidents on June 5, 1990 and September 26, 1990.) Following his hospital treatment for injuries allegedly sustained in Accident #1, Dessin treated with Dr. Sbordone for back and neck injuries. Dr. Sbordone submitted an Attending Physician Report to Commerce and Metropolitan Insurance Companies denying any previous injury.
In Accident #2, Dessin treated at Somerville Hospital. The emergency room records for that accident again contain a denial of previous similar injuries. Dessin then treated with Dr. Sbordone for back and neck injuries. Dr. Sbordone reported to Safety Insur *303 anee Company that the sole cause of Dessin’s present injuries was Accident #2, that Dessin’s past medical history did not contribute to the present injuries, and that Dessin had been in “good health.”
In Accident #3, Dessin initially treated at Somerville Hospital for injuries to his chest, back, left shoulder and left knee. The emergency room records note that Dessin denied any relevant medical history or history of any similar injury. Dessin had ceased treatment with Dr. Sbordone on February 4, 1992, the same day as Accident #3. Dessin then treated with Dr. Joel Charles (“Charles”) from February 6, 1992 through April 2, 1992, at which time Dessin ceased treatment on his own. Dr. Charles’ Attending Physician Report, dated May 20, 1992, and narrative report, dated July 14, 1992, both state that Dessin “was rated for,” or there was a possibility of, at least 5%, permanent impairment from his injuries. Dr. Charles noted that Dessin complained of neck, lower back, left shoulder and left leg pain, and he diagnosed Dessin with cervical and lumbar sprain/strain. Dr. Charles submitted his Attending Physician Report to Liberty Mutual Insurance Company (“Liberty”) and/or Safety Insurance Company (“Safety”), and Jerome sent Dr. Charles’ narrative report to Liberty.
In Accident #4, Dessin claimed injuries to his back and neck. The Malden Hospital emergency room records show that Dessin denied any history of previous injury. Dessin then treated with Dr. Sbordone, whose records do not indicate any prior treatment nor any prior similar injuries suffered by Dessin. As a result of Accident #4, Dessin also treated with another chiropractor, Donald S. Green (“Green”), whose records state that Dessin’s past medical history includes “an auto accident a year ago without residuals.” Dr. Green’s records do not mention any of the other prior accidents.
In Accident #5, Dessin again treated at Somerville Hospital. Once more, the emergency room records contain a denial of previous similar injuries. Dessin then treated with Drs. Khalsa and Jacques for neck, back, shoulder and knee pain. Both doctors state in their reports (Khalsa’s reports dated July 1, 1993 and September 19, 1993 and Jacques’ reports dated July 10, 1993 through August 14, 1993) that Dessin’s injuries were causally related to this accident (Accident #5). Dr. Khalsa’s treatment notes, dated June 25, 1993, indicated “Prior MVA [motor vehicle accident] recovered ” In addition, Dr. Khalsa’s September 9, 1993 narrative report noted that Dessin informed him (Dr. Khalsa) that he did not have the present symptoms prior to this accident. The report also stated that Dessin’s back and neck injuries were “permanent and stationary,” further treatment would probably not help, and that there was a high probability of future flare-ups, -without further trauma, for an indeterminate period of time. Jerome’s office submitted both the hospital records and Drs. Khalsa and Jacques’ medical reports to Liberty.
After Accident #6, Dessin treated at Somerville Hospital for injuries to his lower back, left leg, right hip and both shoulders. The emergency records showed the same “no relevant medical histoiy or history of similar injury” notation as in the previous accidents. Drs. Khalsa and Jacques again provided further treatment to Dessin. Both doctors stated in their reports and other documents that Dessin’s injuries were causally related to this accident (Accident #6). (See Khalsa’s letter dated November 19, 1993, which indicates that Dessin suffered back, neck, shoulder and upper arm injuries, and Jacques’ notes dated November 13, 1993, January 2, 1994 and January 22, 1994, which indicate injuries to Dessin’s back, left leg, both arms and right shoulder.) Dr. Khalsa’s discharge report, dated February 14, 1994, noted that flare-ups were possible and included Khalsa’s treatment notes which stated: “Prior MVA recovered.”[3]
In regard to Accident #6, Jerome forwarded a demand letter, dated May 15, 1994, to Arbella Mutual Insurance Company (“Arbella”), outlining Dessin’s injuries. In the letter, Jerome stated that Dessin was in a motor vehicle accident on April 2, 1993, as shown by Somerville hospital records, but was fully recovered. On May 31,1994, Jerome’s office submitted Drs. Khalsa and Jacques’ medical reports to Arbella, and Jerome stated in the cover letter that Dessin’s injuries were causally related to Accident #6.
In July 1994, Arbella notified Jerome that Dessin’s present claim for Accident #6 was under investigation. In response to Arbella’s request, Jerome sent Arbella signed authorizations releasing all medical information from Dessin’s prior accident of June 24, 1993 (Accident #5). On May 8, 1995, Jerome’s office forwarded copies of the medical reports from Accident #5 and noted that Dessin had completed treatment for that accident on August 11, 1993 and had no residuals. Arbella’s file notes indicate that it received these medicals, settled Dessin’s claims, and knew of Dessin’s multiple prior and subsequent motor vehicle accidents.
Neither Jerome or Dessin submitted a claim for permanent injury or exacerbation of any prior permanent injury in any of the accidents.
DISCUSSION
As a general rule, a court “will not inquire into the competency or sufficiency of the evidence presented to a grand jury.” Commonwealth v. Club Caravan, Inc., 30 Mass.App.Ct. 561, 566 (1991). However, a grand jury indictment must be dismissed if the grand jury received insufficient “evidence to establish the identity of the accused . . . and probable cause to arrest him.” Commonwealth v. O’Dell, 392 Mass. 445, 450 (1984), quoting Commonwealth v. McCarthy, 385 Mass. 160, *304 163 (1982). Probable cause to arrest exists where the facts and circumstances presented would warrant a person of reasonable caution in believing that the defendant has committed or was committing an offense. Club Caravan, Inc., 30 Mass.App.Ct. at 567. “Probable cause to arrest requires more than mere suspicion but something less than evidence sufficient to warrant a conviction.” Commonwealth v. Hason, 387 Mass. 169, 174 (1982). See also Commonwealth v. Roman, 414 Mass. 642, 647 (1993).
Additionally, a grand jury indictment must be dismissed if the integrity of the grand jury proceedings was impaired. An indictment will not be dismissed simply because false or deceptive evidence was presented to the grand jury. Commonwealth v. Mayfield, 398 Mass. 615, 619-22 (1986). The indictment will be dismissed only if it is shown that such evidence was submitted to the grand jury knowingly and for the purpose of obtaining an indictment and that the false or deceptive evidence probably influenced the grand jury decision to indict. Id. A showing of the Commonwealth’s reckless disregard of the truth leading to the presentation of false or deceptive evidence could also warrant dismissal of an indictment if it is shown that the evidence was material to the probable cause issue and that the false or deceptive evidence probably made a difference. Id.
I. Sufficiency of the Evidence to Establish Probable Cause A. G.L.c. 266, §11 IB-Motor Vehicle Insurance Fraud
G.L.c. 266, §11 IB provides:
Whoever, in connection with or in support of any application for or claim trader any motor vehicle... insurance policy issued by an insurer, and with intent to injure, defraud or deceive such insurer knowingly presents to it, or aids or abets in or procures the presentation to it of, any notice, statement, or proof of loss ... knowing that such notice, statement or proof of loss contains any false or fraudulent statement or representation of any fact or thing material to such application or claim, shall be punished . . .
The Commonwealth presented sufficient evidence to the grand jury to establish probable cause that the defendants violated c. 266, §11 IB as the grand jury received evidence that Dessin and Jerome submitted documents and reports to insurers containing false or fraudulent information.
1. Dessin’s acts.
The grand jury could have reasonably believed that Dessin provided false information to the Mount Auburn Hospital emergency room staff regarding Accident #1 and to the Somerville Hospital emergency room staff regarding Accidents #2-#5. The emergency room records for each accident noted that Dessin denied any previous relevant medical history or prior injuries. However, even in accidents prior to Accident #1, Dessin had complained of back and neck injuries and hadbeen treated by a chiropractor for such ailments. Further, as to Accident #5, Dr. Khalsa’s September 9, 1993 narrative report noted that Dessin said he did not have the present symptoms of back, neck, shoulder and knee pain prior to Accident #5.
Additionally, although Dessin’s last treatment with Dr. Sbordone for Accident #2 was on the day of Accident #3, Dessin went to a different chiropractor, Dr. Charles, for treatment of his injuries allegedly sustained in Accident #3. In Accident #4, Dessin returned to Dr. Sbordone for treatment; however, Dessin switched doctors again in Accidents #5 and #6 and treated with Drs. Khalsa and Jacques. Dessin’s constant changing of doctors in this manner, considering the time frames involved, together with his repeated denials of any prior similar injuries, could reasonably lead a grand jury to believe that Dessin was attempting to defraud the insurers.
Based on the above, there was sufficient evidence for the grand jury to find probable cause that Dessin made false statements to the hospital staff and doctors with knowledge that his medical records would be submitted to insurers. (It is noteworthy in this regard that Dessin filed numerous claims prior and subsequent to Accident #1).
2. Jerome’s acts.
In Accident #5, Jerome forwarded to the insurer the hospital records and the reports of Drs. Khalsa and Jacques. Because of his prior representation of Dessin in Accident #3, the grand jury could reasonably believe that Jerome knew that these records and reports contained false information. The grand jury could reasonably have believed that Jerome knew the hospital records stated incorrectly that Dessin had no previous similar injuries or any relevant medical history. Additionally, the grand jury could reasonably have found that Jerome knew the reports of Drs. Khalsa and Jacques falsely asserted that Dessin’s injuries were causally related to this accident, especially considering Dr. Khalsa’s September 9, 1993 report noting that Dessin informed him that he did not have the present symptoms prior to this accident and Dr. Khalsa’s June 25,1993 treatment notes indicating “Prior MVA recovered." Jerome was aware that Dessin had suffered similar injuries in Accident #3 and that Dr. Charles had reported that there was a chance of at least 5% permanent impairment. Therefore, there was probable cause for the grand jury to believe that Jerome knew that the doctors’ reports (which related the injuries Dessin allegedly suffered in Accident #5 solely to Accident #5) misrepresented the true state of Dessin’s injuries.
In Accident #6, Jerome submitted the hospital and doctors’ records to Arbella. The hospital records had the same false denial of previous similar injuries as in *305 Accident #5, and the doctors’ records again stated that Dessin’s injuries were causally related to this accident. Dr. Khalsa’s February 14, 1994 treatment notes indicated “Prior MVA recovered."
In addition, the grand jury could reasonably have believed that Jerome’s demand letter of May 15, 1994 contained false information as it claimed that Dessin was in an accident on April 2, 1993, as shown by hospital records, but was fully recovered. There is no evidence that Dessin was ever in an accident on that date. Further, when Jerome sent the medical reports to Arbella, Jerome included a note that Dessin had no residuals from Accident #5. The grand jury could have believed that this was a falsehood as Dr. Khalsa stated in his September 9, 1993 report that Dessin’s back and neck injuries were “permanent and stationary” and that there was a high probability of future flareups.
Therefore, there was sufficient evidence for the grand jury to have found probable cause that Jerome submitted documents containing false statements made by himself and others in violation of §11 IB.
Jerome claims that he is not required under §11 IB to disclose information regarding Dessin’s previous accidents, injuries, or treatment. However, the above affirmative misrepresentations made by Dessin and Jerome are sufficient to impose liability under §11 IB. The statute clearly includes the failure to disclose. A person submitting a claim against an insurance company must provide truthful medical information and reports to support the claim made. The information cannot be false, but it also must not create misrepresentations by material omissions. On the above evidence, the grand jury could conclude that Jerome wrote claim letters in a deceptive manner and submitted reports which were designed to mislead and defraud the insurer.
Jerome further alleges that it would be unethical for him to reveal information which would be damaging to his client’s case. However, §11 IB forbids him from making misrepresentations about his client’s case. It is incongruous that Jerome cites an ethical obligation to support his actions. If the client insists that the attorney act unethically, the attorney is obligated to withdraw.
Jerome also contends that the allegedly false representations and various omissions in the documents submitted to the insurers are not material. Jerome claims that the insurers had access to the Claim Index Bureau (“CIB”),[4] which indicates that Dessin had submitted numerous insurance claims for prior accidents. Therefore, Jerome maintains that since the insurers were on notice of Dessin’s previous accidents and prior medical history, the omission or concealment of this information was not material. However, it is not a defense to argue that the victim was negligent and could have discovered the fraud upon further investigation. See Commonwealth v. Camelio, 1 Mass.App.Ct. 296, 300 (1973). Accordingly, the grand jury had probable cause to believe that defendants’ misrepresentations and omissions were material as they are the type of information which affects an insurance company’s decision to settle a claim.
The fact that Dessin made no claim for permanent injuries or exacerbation of previous permanent injuries is irrelevant. It was reasonable for the grand jury to infer that defendants’ submission of materials containing false information and their failure to disclose relevant information about Dessin’s prior accidents, injuries, and treatment directly impacted the insurers’ decisions to settle Dessin’s claims, regardless of whether the claims were for permanent injuries.
Additionally, contrary to Jerome’s claim, the fact that the insurers subsequently obtained documents noting Dessin’s previous accidents and medical history does not assist the defendants. Defendants had already submitted fraudulent materials to the insurers. Such acts alone would suffice to render defendants liable.
B. G.L.c. 266, §30 — Larceny over $250
G.L.c. 266, §30 provides:
(1) Whoever steals, or with intent to defraud obtains by a false presence, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . .
Defendants claim that the Commonwealth failed to present any evidence to the grand jury that they made false representations to the insurers, a necessary element of the Commonwealth’s theory that defendants violated c. 266, §30. Commonwealth v. Green, 326 Mass. 344, 348 (1950) (listing elements of c. 266, §30, which includes false representations). However, as demonstrated in the discussion regarding c. 266, §11 IB, the Commonwealth presented sufficient evidence to establish probable cause that defendants submitted documents containing false information. It was reasonable for the grand jury to determine that the intent of defendants to defraud the insurers could be inferred from the fact that defendants submitted false materials and failed to disclose Dessin’s prior injuries, knowing that the insurers would rely on these documents in their decision to settle Dessin’s claims.
C. G.L.c. 274, §7 — Conspiracy
G.L.c. 274, §7 states, “Any person who commits the crime of conspiracy shall be punished . . .” There was sufficient evidence presented to the grand jury to provide probable cause that defendants violated c. 274, §7. The grand jury could infer that Dessin explicitly or tacitly formed agreements with Jerome, Dr. Sbordone, Dr. Khalsa, and Dr. Jacques to defraud the *306 insurers by the fact that Jerome, Dr. Sbordone, Dr. Khalsa, and Dr. Jacques aided Dessin in submitting false information to the insurers. In Commonwealth v. Mulrey, 170 Mass. 103 (1898), the Court stated “[I]f Mulrey falsely pretended that the city owed Finneran [the codefendant] money which it did not owe, and thereafter Finneran drew the amount, the jury were warranted in finding that it was by pre-established harmony rather than by fortuitous concurrence.” Mulrey, 170 Mass. at 110. Similarly, in this case, the grand jury could reasonably infer that, if the alleged co-conspirators made false statements about Dessin’s injuries and failed to disclose relevant information about previous similar injuries, thus inducing the insurers to settle with Dessin, “it was by pre-established harmony rather than by fortuitous concurrence.” Id. None of the individuals involved corrected or exposed Dessin’s misrepresentations recorded in the hospital records they received and/or forwarded to the insurers and they each forwarded documents containing their own fraudulent statements. A reasonable person could believe that the alleged co-conspirators acted in agreement with Dessin with the knowledge that Dessin intended to commit a crime.
The grand jury also could infer that defendant Jerome formed agreements with Dessin, Dr. Khalsa, and Dr. Jacques to defraud the insurers. The Commonwealth presented sufficient evidence to the grand jurors to establish probable cause that Jerome was assisted by Dessin, Dr. Khalsa, and Dr. Jacques in submitting false information to the insurers by including their own misrepresentations in documents forwarded to Jerome and/or the insurers and by not correcting misinformation in documents sent to Jerome and/or the insurers.
II. Impairment of the Integrity of the Grand Jury Proceedings
Jerome asserts that the indictments against him must be dismissed because the integrity of the grand jury proceedings was impaired. O’Dell, 392 Mass. 445. He bases this claim on a variety of factors. Jerome claims that certain inaccurate or false statements were made by the government witness, Investigator Patrick Moore (“Moore”); that the Commonwealth withheld certain exculpatory evidence; and that there was an overwhelming volume of documents presented which Jerome suggests that the grand juiy did not review.
As to Jerome’s claim that Moore made factual misstatements, there is no showing that Moore’s testimony[5] (even if proven to be inaccurate) was given with the knowledge that it was false or deceptive, was given with the intention of obtaining an indictment, and that it probably influenced the grand jury’s determination to hand up an indictment. Mayfield, 398 Mass. at 619-22. See also Commonwealth v. Martino, 412 Mass 267, 279 (1992); Commonwealth v. Pond, 24 Mass.App.Ct. 546, 551 (1987). Thus, it is not necessary to inquire into the adequacy or competency of Moore’s testimony. Commonwealth v. Salman, 387 Mass. 160, 166 (1982).
Similarly, Jerome has not supported his allegation that the Commonwealth excluded certain exculpatory evidence. Although the documents presented to the grand jurors were voluminous, all of the allegedly exculpatory records and reports that Jerome claims were excluded were in fact included in the Commonwealth’s submission and available to the grand jury to review. There is no Massachusetts case on point, but the reasoning of cases from other jurisdictions indicates that there need not be any showing that the grand jurors actually examined any specific document. It is sufficient that the documents were available to them. See United States v. Carcaise, 442 F.Sup. 1209 (M.D. Fla. 1978); State v. Ciba-Geigy Corp., 222 N.J. Super. 343 (App.Div. 1988).
There is no showing that any alleged error Jerome claims that the Commonwealth made in its presentation of the evidence to the grand jury (such as the Commonwealth’s emphasis on misleading and false information or its failure to highlight certain documents) was deliberate or intentional and was done in order to obtain an indictment. There also is no showing that any alleged error by the Commonwealth significantly affected the grand jury’s decision to indict. Mayfield, 398 Mass. 615. Therefore, this Court finds that the grand jury proceedings were not impaired.
ORDER
It is hereby ORDERED that the defendants’ motions to dismiss be DENIED.

Dessin has been indicted for conspiring with co-defendant, Jerome. Dessin has also been indicted for conspiring with Gary Sbordone, M.D., Hari Khalsa, D.C., and Emilio Jacques, M.D. Jerome has been indicted for conspiring with Dessin, Dr. Jacques and Dr. Khalsa. Drs. Jacques and Khalsa were originally subjects of indictments; however, the indictments against them have been nolle prossed. Dr. Sbordone was also indicted; however, he is not the subject of the instant motions.

The parties provided no information as to what attorney, if any, represented Dessin in his claims arising from the other accidents.

This notation was illegible in the copy provided to the grand jury.

Defendants’ papers do not make clear what the CIB’s function is; however, it can be inferred that the CIB provides information on claims submitted to insurance companies by an individual.

Jerome alleges that Moore falsely testified that the insurers in Accidents #5 and #6 were unaware of Dessin’s history of similar claims and that Arbella did not settle Dessin’s claim in Accident #6.